[No. H010557. Sixth Dist. Oct. 27, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
THERESA GROAT, Defendant and Appellant.

**COUNSEL**

Frederick R. Remer and Harris B. Taback for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Richard Rochman, Deputy Attorneys General, for Plaintiff and Respondent

## OPINION

**PREMO, Acting P. J.**—Defendant Theresa Groat was indicted by the Grand Jury of Santa Clara County on December 16, 1991, on one count of misappropriating public funds (Pen. Code, § 424).[1] She moved to set aside the indictment (§ 995, subd. (a)(1)(B)) arguing that section 424 was inapplicable to her. The motion was dismissed. After waiving her right to a jury trial, she submitted the issue of her guilt on the transcript of the grand jury proceeding. She was convicted, her sentence was suspended, and she was placed on probation for three years with conditions that she pay restitution of $3,524.50, attend a psychological treatment program, and perform one hundred hours of community service. We affirm.

### FACTS

Defendant was employed by the City of Sunnyvale Department of Public Safety as the manager of the operations unit. Her immediate superior was Commander Ralph Hern. He testified before the grand jury regarding the role of the operations unit and defendant's responsibilities. The operations unit maintained police and fire department records and responded to citizen inquiries. There were 15 employees working under defendant's supervision. Defendant was expected to be at work from 8 a.m. to 5 p.m. for a regular 40-hour week. As a unit manager she was an "exempt" employee, that is, the Fair Labor Standards Act, requiring compensation for all actual hours worked, did not apply to her. Consequently, she did not have to indicate on her time card her actual time in and out. She could have worked hours other than 8 a.m. to 5 p.m., but to do so required the approval of Commander Hern. She completed her time card by filling out the total number of hours as either regular time, sick time, or a combination, and signing the card. Although Commander Hern often cosigned the cards, his signature was not necessary in order for her paycheck to be issued.

Defendant was also an instructor at Los Medanos College in Pittsburg, California. Her supervisor there, Diane Jorgensen, testified at the grand jury hearing that on 16 specific dates between February 26, 1990, and October 2, 1991, defendant had taught classes in Pittsburg. All classes took place

---

[1]Further *statutory* references are to the Penal Code unless otherwise specified.

between 8 a.m. and 5 p.m. For the same dates on which defendant was teaching in Pittsburg, her Sunnyvale time cards reflected that she had either been at work in Sunnyvale or had been sick. At no time during this period had she either requested or received Commander Hern's approval to work hours other than her regular 8 to 5.

When her activities came under investigation, she cooperated with the investigator and admitted to having recorded regular hours when she had not been at work. When asked about the sick time she said she had had a sore throat but admitted that she had been teaching at Los Medanos on the days she reported as sick. She received paychecks from the City of Sunnyvale for a total of 70.5 regular hours and 55 hours of sick time for those days.

She was prosecuted under section 424, which reads, in relevant part: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either: [¶] 1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or, . . . [¶] 3. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same; . . . [¶] 4. Fraudulently alters, falsifies, conceals, destroys, or obliterates any such account . . . . [¶] Is punishable by imprisonment in the state prison for two, three or four years, and is disqualified from holding any office in this state."

### CONTENTIONS ON APPEAL

Appellant argues that there was insufficient evidence for the trial court to convict her of violating section 424. She states that there was no evidence to show that she was a person charged with the receipt, safekeeping, transfer, or disbursement of public monies. She states as well that her conduct did not violate any of the subdivisions of section 424.

### DISCUSSION

Appellant does not dispute the facts. She contends only that the law under which she was convicted does not apply to her and that her actions were not illegal under it. The application of a statute to undisputed facts raises a pure question of law and on appeal the court will make an independent determination as to whether those facts support the conclusion that a crime has been committed. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240]; *People* v. *Leyba* (1981) 29 Cal.3d 591, 598 [174 Cal.Rptr. 867, 629 P.2d 961].)

To be convicted under section 424, a defendant must be a public "officer" or a "person charged with the receipt, safekeeping, transfer, or disbursement

of public moneys" and defendant's conduct must be prohibited by one of the subdivisions of that section. (§ 424.)

In determining whether section 424 applies to appellant, we keep in mind the evil the law was intended to prevent. ▮▮▮ Statutes relating to misappropriation of public funds by public officers were enacted to safeguard the public treasury and ensure public confidence in the state's use of its funds. "The safekeeping of public moneys has, from the first, been safeguarded and hedged in by legislation most strict and severe in its exactitudes. It has continuously been the policy of the law that the custodians of public moneys or funds should hold and keep them inviolate and use or disburse them only in strict compliance with the law." (*People* v. *Dillon* (1926) 199 Cal. 1, 12 [248 P. 230].)

▮▮▮ The Legislature imposed strict responsibilities on persons charged with control of public funds by enacting section 424. The section does not require specific fraudulent intent, nor is it limited to theft alone. Any use of public funds not authorized by law is a violation of section 424. (§ 424 subd. 2; see also *People* v. *Battin* (1978) 77 Cal.App.3d 635 [143 Cal.Rptr. 731, 95 A.L.R.3d 248] [no specific dollar amount loss need be demonstrated for a violation of § 424, subd. 2].)

▮▮▮ Courts have recognized the Legislature's intent to hold public officers specially accountable. Those "who either retain custody of public funds or are authorized to direct the expenditure of such funds bear a peculiar and very grave public responsibility, and . . . courts and legislatures, mindful of the need to protect the public treasury, have traditionally imposed stringent standards upon such officials. (See, e.g., Pen. Code, § 424; *People* v. *Dillon* (1926) 199 Cal. 1, 12-15 [248 P. 230]; *Bird* v. *McGoldrick* (1938) 277 N.Y. 492 [14 N.E.2d 805, 806-807, 116 A.L.R. 1059] (Lehman, J.).)" (*Stanson* v. *Mott* (1976) 17 Cal.3d 206, 225 [130 Cal.Rptr. 697, 551 P.2d 1].)

▮▮▮ Because of the essential public interest served by the statute it has been construed very broadly. The state Courts of Appeal have held that "to be charged with the receipt, safekeeping, transfer, or disbursement of public moneys" within the meaning of section 424 requires only that the defendant have some degree of control over public funds and that control need not be the primary function of defendant in his or her job. A brief series of cases illustrates this interpretation.

A defendant need not ever have actual possession of public moneys. *Dillon* refers to section 424 as applying to public officers charged with

custody or control of public money. (*People* v. *Dillon*, *supra*, 199 Cal. at p. 5.) Subsequent appellate cases have relied on this reference. In *People* v. *Qui Mei Lee* (1975) 48 Cal.App.3d 516 [122 Cal.Rptr. 43], the county medical director forged and approved false invoices for county medical services. Defendant was his secretary and was convicted of aiding and abetting. On appeal she claimed that her boss, as principal, was not chargeable under the statute because his duties did not require him to have actual possession of the funds. The court rejected the argument and held that "[n]o express language in section 424 restricts its application to cases where the public officer's duties include the possession of public funds." (*Id.* at p. 523.) The defendant in *People* v. *Battin*, *supra*, 77 Cal.App.3d at pages 649-650, made the same claim which that court roundly rejected, citing *Qui Mei Lee*.

Section 424 has also been held to apply to persons whose primary duties are unrelated to public moneys. *People* v. *Vallerga* (1977) 67 Cal.App.3d 847 [136 Cal.Rptr. 429], rejected defendant's contention that the law applied only to persons whose *primary duty* was receipt and disbursement of public funds. There, a county assessor's authority to spend funds in his department's travel budget was considered sufficient to give him control over public moneys. (*Id.* at p. 872.) In *Webb* v. *Superior Court* (1988) 202 Cal.App.3d 872 [248 Cal.Rptr. 911], the court stated that the petitioner need not be directly charged, in his job description or the common responsibilities of his position, "with receipt, safekeeping, transfer or disbursement of public funds . . . . It is sufficient if the public official controls public funds so as to cause their expenditure for nonpublic purposes. [Citation.]" (*Id.* at p. 887.)

Finally, the scope of section 424 is not limited to public officers but includes "every other person" with some control over public funds. The section was held to apply to a county eligibility worker because her authority to complete emergency check requisitions for clients was the first step in the process of disbursing that public money. (*People* v. *Evans* (1980) 112 Cal.App.3d 607, 615-616 [169 Cal.Rptr. 240].) In *People* v. *Wall* (1980) 114 Cal.App.3d 15 [170 Cal.Rptr. 240], the defendant was a parking meter collector. The court found that he was a person charged with the receipt and transfer of public money in that his job required him to empty coins from parking meters. (*Id.* at p. 22.)

Appellant distinguishes these cases from hers by noting that in each "the defendant was either a public officer or had duties that included some type of disbursement of 'public moneys.'" We fail to see the distinction.

Appellant is clearly a person charged with disbursement of public money in her ability to authorize her own pay. At least two courts have held that the

certification of a time sheet constitutes disbursement of funds. Where a county supervisor approved time sheets for county staff who had been working on his political campaign, the court held that ". . . defendant here authorized the expenditure of county moneys for noncounty activities. Defendant's certification on the staff time sheets was, indeed, a 'disbursement' of public moneys within the meaning of section 424." (*People* v. *Battin*, *supra*, 77 Cal.App.3d at p. 650.)

In *People* v. *Sperl* (1976) 54 Cal.App.3d 640 [126 Cal.Rptr. 907], the defendant was the county marshal. He assigned several deputies to lobbying duties in Sacramento on behalf of a private organization and instructed his secretary to falsify the time sheets. The court determined that "[u]nquestionably, the [deputies'] time records 'related' to the disbursement of public moneys. These records were used as the basis for the disbursement of county funds to the various employees and defendant was under an obligation as a public officer not to cause such funds to be paid improperly." (*Id.* at p. 656.)

██ As a manager with the department of public safety, appellant reported on her time card the number of hours for which she was to be compensated each pay period. She did not have to record the actual hours she worked. Her immediate supervisor testified that his review of managers' time cards was perfunctory and that, although he occasionally signed them, his approval was not necessary to issue a manager's pay warrant. Because she had the authority to certify her own time card, appellant had control over those public funds eventually paid to her as salary and therefore is a person charged with their disbursement for purposes of section 424.

Having determined that appellant is included in the scope of section 424, we direct our attention to the violations with which she was charged. She was indicted on one count of violation of section 424 (misappropriation of public funds). It was charged that she "did appropriate said public moneys to her own use and knowingly kept a false account and made false entries in an account relating to said public moneys and fraudulently falsified said account." The charge implies violations of subdivisions 1, 3, and 4 of section 424. Appellant submitted the issue of her guilt on the record of the grand jury hearing. She, in effect, admits that on at least 16 days during 1990 and 1991 she submitted time cards indicating time worked or sick when she was neither at work nor at home sick but in fact teaching classes at Los Medanos College in Pittsburg.

The only difference between this case and the *Sperl* and *Battin* cases is that appellant approved unauthorized salary for herself rather than for others under her supervision. Under both *Sperl* and *Battin*, the authority to approve

time records is tantamount to disbursing public moneys. When appellant filled out her time card, she took the first step in the process which led to the disbursement of public funds in the form of her paycheck. There is certainly no authority of law for the payment of public funds as salaries for work never performed. "[S]alaries are 'public moneys' within the meaning of section 424, and . . . one who authorizes the illegal payment of salaries has violated that section." (*People* v. *Battin, supra,* 77 Cal.App.3d at p. 650.)

## CONCLUSION

We find that section 424 applies to appellant because in her position as a manager with the Sunnyvale Department of Public Safety she has authority to authorize her own pay without the approval of her superior. Because the authorization of a pay warrant to a public worker results in the disbursement of public moneys, any fraudulent authorization amounts to misappropriation of public funds and is a violation of the section. Therefore, appellant's admitted acts of falsifying her time cards and accepting pay for work not performed violates subdivisions 1, 3, and 4 of section 424.

## DISPOSITION

The judgment is affirmed.

Elia, J., and Wunderlich, J., concurred.