174 Cal.App.4th 1025 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
DANIEL ALDANA et al., Defendants and Appellants.
No. G040320.
Court of Appeals of California, Fourth District, Division Three.
June 8, 2009.
As modified June 26, 2009.
*1027 David Joseph Macher for Defendant and Appellant Daniel Aldana.
Law Office of E. Thomas Dunn, Jr., and E. Thomas Dunn, Jr., for Defendant and Appellant Donna Matney.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Sabrina Y. Lane-Erwin and Vincent La Pietra, Deputy Attorneys General, for Plaintiff and Respondent.

*1028 OPINION
FYBEL, J. 

INTRODUCTION
Defendants Daniel Aldana and Donna Matney were each charged with two counts of grand theft, and one count each of misappropriation of public funds, knowingly keeping false accounts, and altering public records. A jury acquitted Aldana of all but one count. The jury was unable to reach a verdict as to one count against Matney, and similarly acquitted her of all but one of the remaining counts against her. The jury also found not true all sentencing enhancements alleged against Aldana and Matney.
(1) Aldana and Matney separately appeal their convictions for violating subpart 3 of Penal Code section 424, subdivision (a), which prohibits those charged with control over the expenditure of public moneys from keeping false accounts or making false entries in accounts.[1] Matney had hired Aldana to perform administrative services at a regional county medical facility. Matney obtained Aldana's signature on blank timesheets, estimated and averaged the number of hours Aldana performed administrative duties, and prepared and signed Aldana's timesheets, thereby authorizing Aldana's paychecks. The timesheets did not accurately reflect the hours Aldana worked for the county, although the evidence showed, and the Attorney General does not dispute, Aldana worked many more hours for the county under an agreement to perform administrative tasks than he was paid for or than were listed on his timesheets.
We reject Aldana's and Matney's claims that the jury was erroneously instructed regarding the element of intent. Section 424(a)(3) is a general intent crime, and the trial court correctly instructed the jury that it was not necessary for the prosecution to prove Aldana and Matney had an intent to deceive. Although the crime is a general intent crime, proof of Aldana's and Matney's guilty knowledge was required; the jury instructions correctly included this requirement.
We conclude there was insufficient evidence to support Aldana's conviction, because he was not an "officer of this state, or of any county, city, town, or district of this state, [or a] person charged with the receipt, safekeeping, transfer, or disbursement of public moneys." (§ 424(a).) Additionally, there *1029 was insufficient evidence Aldana knowingly kept a false account or knowingly made a false entry on his timesheets. Therefore, we reverse the judgment against Aldana.
Finally, we conclude there was insufficient evidence of Matney's guilty knowledge to support her conviction. Under the well-settled Supreme Court precedent as set forth in People v. Salas (2006) 37 Cal.4th 967 [38 Cal.Rptr.3d 624, 127 P.3d 40] (Salas) and People v. Simon (1995) 9 Cal.4th 493 [37 Cal.Rptr.2d 278, 886 P.2d 1271] (Simon), the prosecution was required to prove that Matney had knowledge her actions constituted criminal conduct, or that she was criminally negligent in lacking such knowledge. Such proof was insufficient, and we must therefore reverse the judgment against Matney.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
In April 2000, Matney was named the hospital administrator at Riverside County Regional Medical Center (RCRMC), and assumed full control in January 2001. At the time, RCRMC faced a deficit of $18 million. Matney regularly worked 16 hours per day, seven days a week. She had responsibility for 2,000 employees, and oversaw the operations of a 364-bed acute care facility, a 77-bed psychiatric facility, and a level two trauma center. Matney was "absolutely overwhelmed" in her job. Nevertheless, Matney was able to turn the hospital around financially, and leave it $11.2 million in the black by June 30, 2001.
Aldana was a physician practicing at RCRMC. He received a salary of $150,000 through his medical group, Riverside Regional Pediatric Medical Group, and served as the head of the pediatric unit at RCRMC. Aldana received an additional $50,000 in salary from his medical group for his duties as a physician-liaison for hospital risk management.
In December 2000, Matney hired Aldana as an administrative liaison in risk assessment for RCRMC. Aldana was compensated through the temporary assistance pool program (TAP), which provides county funds so county agencies may hire workers on a temporary basis to fill the agencies' needs. Aldana was paid $81.88 per hour as a TAP employee. He worked for RCRMC through TAP from December 28, 2000, through July 25, 2002. There is no dispute that Matney had the authority to hire Aldana in that capacity.
TAP required employees to report their actual hours worked during each pay period, and required supervisors to certify the hours the employees *1030 worked. Aldana signed blank TAP timesheets, and provided them to Matney, who filled in the number of hours worked each day on Aldana's behalf and signed them to indicate her approval. Both Matney and Aldana[2] acknowledged the timesheets did not accurately reflect the actual hours Aldana worked on any particular day. Matney explained it was impractical and impossible considering the nature of Aldana's administrative consulting workgiven that he was available to Matney 24 hours a day, seven days a weekas well as the time Aldana spent on his other duties at the hospital and elsewhere. Aldana was Matney's "copilot" during the time he assisted her in those administrative duties.
Matney did not keep track of the actual hours Aldana worked. Instead, Matney estimated and averaged the number of hours she recorded on Aldana's timesheets. Matney recorded hours on Aldana's timesheet for days she knew he did not work, including his wedding day, because he had worked previously, and Matney believed the county owed him money for the time he had already worked.
Aldana was also paid with TAP funds for producing 10 paintings for the RCRMC pediatric unit. In a letter to RCRMC's chief operating officer, Aldana stated he had asked Matney to track the time he spent painting, and, in response, Matney increased the number of hours logged on Aldana's timesheets. Matney never asked Aldana how much time he spent painting, as opposed to his administrative tasks for TAP. Based on investigations of the cost of artwork conducted by her and her assistant, Matney decided Aldana was entitled to $30,000 in total for his 10 paintings, and recorded hours on Aldana's timesheets to reach that figure.
Matney testified she had no purpose or intent to defraud, and did not actually defraud, the county.
In an information, Aldana and Matney were each charged with two counts of grand theft (§ 487, subd. (a)), and one count each of misappropriation of public funds (§ 424(a)(1)), knowingly keeping false accounts (§ 424(a)(3)), and altering public records (§ 424(a)(4)). The information alleged as sentencing enhancements that Aldana and Matney had committed two or more related felonies involving fraud or embezzlement which resulted in the theft of more than $100,000 (§ 186.11, subd. (a)(1)), and that Aldana and Matney *1031 had taken property in the commission of a felony with intent, causing a loss of more than $150,000 (§ 12022.6, former subd. (a)(2)).[3]
A jury convicted Aldana and Matney only of knowingly keeping false accounts. Aldana and Matney were acquitted of grand theft and altering public records. Aldana was acquitted of misappropriation of public funds; the jury could not reach a verdict on that count against Matney, a mistrial was declared, and the count was later dismissed. The enhancement allegations were found to be untrue. Aldana and Matney were each placed on formal probation for three years.

DISCUSSION

I.

JURY INSTRUCTIONSSPECIFIC INTENT VERSUS GENERAL INTENT
Aldana and Matney argue the trial court erred in instructing the jury regarding the intent necessary to violate section 424(a)(3). We review the claim of an erroneous jury instruction independently, considering the instructions as a whole and determining whether it is reasonably likely the challenged instruction confused or misled the jury. (People v. Rundle (2008) 43 Cal.4th 76, 149 [74 Cal.Rptr.3d 454, 180 P.3d 224].)
Section 424(a), creates criminal liability for "[e]ach officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who ... 3. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same."
The jury was instructed as follows: "The defendants are charged ... with keeping or making a false account. To prove that a defendant is guilty of this crime, the People must prove that: [¶] One, the defendant was a public official or a person charged with the receipt, safekeeping, transfer or disbursement of public funds. [¶] Two, the defendant knowingly acted without authority of law. [¶] And three, the defendant knowingly kept any false account or made any false entry or erasure in any account of or relating to the safekeeping, transfer or disbursement of public funds. It is not necessary to show that the defendant had an intent to deceive."
(2) Aldana and Matney argue the violation of section 424(a)(3) is a specific intent crime, and the jury instruction was improper because it *1032 identified the violation as a general intent crime. Aldana and Matney are incorrect. "The Legislature imposed strict responsibilities on persons charged with control of public funds by enacting section 424. The section does not require specific fraudulent intent, nor is it limited to theft alone. Any use of public funds not authorized by law is a violation of section 424. [Citations.]" (People v. Groat (1993) 19 Cal.App.4th 1228, 1232 [24 Cal.Rptr.2d 15] (Groat), italics added; see also People v. Dillon (1926) 199 Cal. 1, 7 [248 P. 230]; People v. Sperl (1976) 54 Cal.App.3d 640, 662 [126 Cal.Rptr. 907] ["it is clear that fraudulent intent or an intent to deceive is not required under section 424, [former] subdivision 3"].)[4]
(3) To state that violation of section 424(a)(3) is a general intent crime, however, does not resolve the issue of the intent necessary to violate the statute. Even for a general intent crime, a defendant generally must have had guilty knowledge; that is, the prosecutor must prove either that the defendant had knowledge his or her actions constituted criminal conduct, or that the defendant was criminally negligent in lacking such knowledge. (Salas, supra, 37 Cal.4th at p. 981; Simon, supra, 9 Cal.4th at p. 522.)
The crimes alleged to have been committed in Salas and Simon are different than the crimes alleged to have been committed by Aldana and Matney. In Salas, the Supreme Court stated, "we ... hold that a defendant is not guilty of the crime of selling an unregistered security in violation of [Corporations Code] section 25110 if there is a reasonable doubt whether the defendant knew the security was not exempt from regulation or was criminally negligent in failing to know that the security was not exempt." (Salas, supra, 37 Cal.4th at p. 981.) By analogy, however, we conclude that this test for the required scienter applies with equal force to alleged violations of section 424(a)(3).[5]
*1033 The requirement that a defendant have guilty knowledge to meet the scienter requirement of a general intent crime can be avoided only for crimes "that involve public health or safety and impose relatively light penalties." (Salas, supra, 37 Cal.4th at p. 978.) Violation of section 424(a)(3) here did not threaten public health or safety, yet resulted in felony criminal convictions. (Even if violation of § 424 could be said to indirectly threaten public health or safety by diverting public funds from needed programs, the potential penalty is not light.) Therefore, proof of guilty knowledge is required in this case.
The jury instructions here met the requirements of Salas and Simon. The jury instruction regarding section 424(a)(3) advised the jury that it must determine whether the prosecution had proven "the defendant knowingly acted without authority of law." (The language of this instruction was proposed by the prosecution.) This, in essence, told the jury it must find Aldana and Matney had acted with guilty knowledge. To say Aldana and Matney knew their actions were without authority of law is to say they knew their actions constituted criminal conduct. During deliberations, the jury sent out a note which read: "Could we get the definition of the following statements: [¶] 1) authority of law [¶] 2) activities not authorized by law." The court answered the jury's question as follows: "`Authority of law' means the laws of the State of California. A person acts `without authority of law' when he or she does that which the laws do not permit, or which the laws specifically prohibit." There was no instructional error.[6]

II.

SUFFICIENCY OF THE EVIDENCE

A. Standard of Review

"`In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses *1034 evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (People v. Steele (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225].) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (People v. Kraft (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) We may reverse for lack of substantial evidence only if "`upon no hypothesis whatever is there sufficient substantial evidence to support'" the conviction. (People v. Bolin (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

B. Aldana's Conviction

(4) Aldana argues he was not within the class of persons subject to prosecution under section 424(a)(3). The statute applies to "[e]ach officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys." (§ 424(a)(3).) Aldana is not an officer of the county. (See Gov. Code, § 24000; People v. Rosales (2005) 129 Cal.App.4th 81, 85 [27 Cal.Rptr.3d 897].)
(5) Was Aldana "charged with the receipt, safekeeping, transfer, or disbursement of public moneys"? No. "Courts have recognized the Legislature's intent [in enacting § 424] to hold public officers specially accountable. Those `who either retain custody of public funds or are authorized to direct the expenditure of such funds bear a peculiar and very grave public responsibility, and ... courts and legislatures, mindful of the need to protect the public treasury, have traditionally imposed stringent standards upon such officials. [Citations.]' [Citation.] [¶] Because of the essential public interest served by the statute it has been construed very broadly. The state Courts of Appeal have held that `to be charged with the receipt, safekeeping, transfer, or disbursement of public moneys' within the meaning of section 424 requires only that the defendant have some degree of control over public funds and that control need not be the primary function of defendant in his or her job." (Groat, supra, 19 Cal.App.4th at p. 1232, italics added.)
In Groat, the defendant prepared and signed her own timecards. (Groat, supra, 19 Cal.App.4th at p. 1230.) No other signature on the timecards was required for the defendant to be paid. (Ibid.) The defendant's timecards reflected she had been at work or been sick when, in fact, she was teaching at a local college. (Id. at pp. 1230-1231.) The court concluded the ability of a public employee to authorize his or her own pay charges that employee with the disbursement of public moneys, and therefore subjects him or her to liability under section 424. (Groat, supra, at pp. 1233-1234.) This is a far cry *1035 from the present case. Aldana was not able to authorize his own pay, as the evidence was undisputed that he submitted his signed but otherwise blank timesheets to Matney not only for her approval, but also for completion by her.
(6) The Attorney General's response to Aldana's argument reads, in total, as follows: "Appellant Aldana also contends that he had no control over public funds and thus was not subject to prosecution under section 424, subdivision (a)(3).... Appellants' claims are unmeritorious. They both acknowledged appellant Aldana's time cards did not reflect the actual hours he worked. Nothing more was required to sustain a conviction for false accounting." (Italics added.) The Attorney General is incorrect. Section 424(a)(3) creates criminal liability only against those persons specified in the statute. Aldana was not an officer of the state, county, or other municipal entity. There was no evidence offered that Aldana was "charged with the receipt, safekeeping, transfer, or disbursement of public moneys," or had any degree of control over public funds.
(7) The parties have cited no case, and we have found none, creating criminal liability under section 424(a)(3), for a public employee who simply signs a timesheet or receives a paycheck, when that employee has no control over the disbursement of the money. If the mere act of a public employee signing or submitting his or her own timesheet for approval were sufficient to create criminal liability under section 424(a)(3), the phrase "charged with" in the statute would be devoid of any meaning. "To charge" means to "entrust with responsibilities or duties." (Black's Law Dict. (8th ed. 2004) p. 248.) Not every public employee is entrusted with responsibilities or duties regarding the receipt, safekeeping, transfer, or disbursement of public moneys, and no evidence was presented in this case that Aldana had any such responsibilities. To the contrary, there was evidence that Matney was the person entitled to authorize Aldana's TAP payments, and Aldana's TAP payments would not have been processed without Matney's signature on his timesheets.
(8) While we agree with the holding and analysis of Groat, and apply them here, we note that Groat describes another case in a way that could lead to confusion and misapplication of section 424. Groat states that, in People v. Evans (1980) 112 Cal.App.3d 607, 615-616 [169 Cal.Rptr. 240], section 424 "was held to apply to a county eligibility worker because her authority to complete emergency check requisitions for clients was the first step in the process of disbursing that public money." (Groat, supra, 19 Cal.App.4th at p. 1233.) People v. Evans actually found criminal liability under section 424 because the county eligibility worker "had the authority to complete the emergent aid requisitions necessary to expedite the issuance of checks to public assistance recipients." (People v. Evans, supra, at p. 616.) This is an *1036 important distinction. No case, including Groat, has held that being only the first step in a process that results in the expenditure of public funds is sufficient to establish criminal liability under section 424 absent approval authority. As the Groat court explained, it is the ability to control the public moneys that is key.
Aldana also argues there was insufficient evidence he knowingly kept a false account or knowingly made a false entry in an account. The Attorney General fails to address this argument. The evidence was undisputed that Aldana signed his TAP timesheets when they were blank, with the understanding that Matney would complete the timesheets, sign them, and submit them for payment.[7] Under these circumstances, it would not be possible for Aldana to knowingly make a false entry on his timesheet, because he did not make any entry on his timesheet.
For all of these reasons, and under the weight of these authorities, we conclude there was insufficient evidence to convict Aldana of violating section 424(a)(3), and reverse the judgment against him.

C. Matney's Conviction

Matney argues there was insufficient evidence that Aldana's timesheets were false. She concedes, as she must, given the evidence, that the hours Aldana worked each day as a TAP employee were not accurately recorded. Matney contends Aldana's timesheets were inaccurate, but not false.
(9) The cases interpreting section 424 have not defined "false." Webster's Third New International Dictionary (1993) at page 819 defines "false" as "not corresponding to truth or reality: not true: ERRONEOUS, INCORRECT." Black's Law Dictionary, supra, at page 635, defines "false" as "Untrue ... Deceitful; lying ... Not genuine; inauthentic ...  What is false can be so by intent, by accident, or by mistake." Under these definitions, Aldana's timesheets, which Matney completed and signed, were false.
Although there was evidence that Aldana received public moneys in his paycheck for working on particular days that he did not actually perform any *1037 work, the evidence was undisputed that, in total, Aldana worked many more hours under TAP than the hours for which he was compensated.
The jury acquitted Aldana and Matney of grand theft, and acquitted Aldana of misappropriation of public funds.[8] Therefore, the jury must have found the TAP payments to Aldana, in and of themselves, did not result in a loss to the county.
(10) What is conspicuously missing in this case is the required evidence of guilty knowledge on the part of Matney. As explained herein, due process requires that a criminal defendant know that his or her actions constitute criminal conduct, or be criminally negligent in not knowing. (Salas, supra, 37 Cal.4th at p. 975; Simon, supra, 9 Cal.4th at p. 522.)
The Attorney General agrees that this is the correct test. Citing to both Simon and Salas, the Attorney General argues in his respondent's brief that "classification of an offense as a general intent crime does not answer the question as to whether the relevant statute requires proof of guilty knowledge of the facts making one[']s conduct criminal, i.e., a culpable mental state with respect to those facts. [Citation.] General intent crimes ordinarily require guilty knowledge of the facts making one's conduct criminal. [Citation.]" The Attorney General further argues that because section 424(a)(3) criminalizes knowingly making a false account, the legal requirement of proof of guilty knowledge was met in this case.
Based on the record before us, we hold that insufficient evidence of Matney's guilty knowledge, as defined in and required by Salas and Simon, was presented at trial. Undisputed evidence showed that Aldana worked more hours under TAP than he was compensated for or than were listed on the timesheets. If Matney believed she was underreporting Aldana's TAP hours, she could not have guilty knowledge vis-à-vis the inaccurate timesheets. There was insufficient evidence that Matney knew her inaccurate recording of Aldana's time constituted criminal conduct, or that she was criminally negligent in not knowing such actions constituted criminal conduct; therefore, her conviction for violation of section 424(a)(3) must be reversed.

*1038 DISPOSITION
The judgments are reversed.
Aronson, Acting P. J., and Ikola, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code, unless otherwise specified. Hereafter, we will refer to the various subdivisions of Penal Code section 424 in the following form: section 424(a)(1), etc.
[2] Aldana did not testify at trial. RCRMC's former chief of staff testified Aldana told him, while Aldana was still employed at RCRMC, that in essence Aldana's timesheets "didn't necessarily reflect reality."
[3] Effective January 1, 2008, section 12022.6, subdivision (a)(2) was amended to increase the amount of the loss to $200,000. (Stats. 2007, ch. 420, § 1.)
[4] Stark v. Superior Court (2006) 140 Cal.App.4th 567 [44 Cal.Rptr.3d 575], review granted September 13, 2006, S145337, is currently pending before the California Supreme Court. One of the issues on review is the following: "Does violation of Penal Code section 424 (falsification of accounts or misappropriation of public funds by a public officer or employee) require intentional violation of a known legal duty or is it a general intent crime?" In his answer brief on the merits in that case, the Attorney General stated that "the issue raised in the petition is not present in ... [section 424(a)(3)]," and therefore did not specifically discuss the need for proof of guilty knowledge with respect to that subdivision. As noted, the Supreme Court's request for briefing referenced "falsification of accounts" in regard to section 424, Only section 424(a)(3) addresses falsification of accounts, and we cannot agree with the Attorney General's assumption that section 424(a)(3) is not within the scope of the issue on which the Supreme Court sought briefing.
[5] The Supreme Court has consistently applied the guilty knowledge requirement to many other general intent crimes. (See, e.g., People v. Garcia (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590] [willful failure to register as a sex offender requires proof of the defendant's knowledge of a duty to register]; In re Jorge M. (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] [guilty knowledge that a firearm possessed characteristics of an assault weapon is necessary for conviction under the Roberti-Roos Assault Weapons Control Act of 1989 (§ 12275 et seq.)]; People v. Rubalcava (2000) 23 Cal.4th 322 [96 Cal.Rptr.2d 735, 1 P.3d 52] [crime of carrying a concealed dirk or dagger requires proof of a guilty mind]; People v. Coria (1999) 21 Cal.4th 868 [89 Cal.Rptr.2d 650, 985 P.2d 970] [conviction for manufacturing methamphetamine requires knowledge the substance is a controlled substance]; People v. Hagen (1998) 19 Cal.4th 652 [80 Cal.Rptr.2d 24, 967 P.2d 563] [Rev. & Tax. Code, former § 19405 required more than a volitional act to willfully make and subscribe a false tax return].)
[6] Section 424(a)(3) does not require that the defendant act "[w]ithout authority of law" (§ 424(a)(1)), or use public moneys "for any purpose not authorized by law" (§ 424(a)(2)). Our holding is not intended to read into section 424(a)(3) elements of section 424(a)(1) or 424(a)(2). However, as we explained ante, if a defendant knowingly acts without authority of law, he or she has the guilty knowledge necessary to prove a violation of section 424(a)(3).
[7] This process was consistent with the process by which Aldana received payment for his regular work as a physician, in which an administrative assistant prepared his monthly time records. Physician timecards did not reflect the actual hours worked, but were a mechanism to obtain for the physicians an appropriate fraction of their annual salary on a monthly or bimonthly basis. Because TAP employees were paid on an hourly rather than a salaried basis, the method of maintaining TAP time records should be different. However, Dr. Benson Harer, the former chief of staff at RCRMC, who performed his physician duties as a TAP employee, always recorded eight hours per day on his TAP timesheet, although he might have worked more hours or fewer hours on any given day. Dr. Harer testified the TAP timesheet was simply a mechanism for getting paid.
[8] Section 424(a) makes it a crime to misappropriate public funds: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either: 1. Without authority of law, appropriates the same, or any portion thereof, to his or her own use, or to the use of another ... Is punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state." Section 487, subdivision (a), defines grand theft as "theft committed in any of the following cases: [¶] (a) When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400)...."