[No. G040320. Fourth Dist., Div. Three. June 13, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL ALDANA et al., Defendants and Appellants.

## COUNSEL

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant Daniel Aldana.

Law Offices of E. Thomas Dunn, Jr., and E. Thomas Dunn, Jr., for Defendant and Appellant Donna Matney.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## FYBEL, J.—

### INTRODUCTION

Defendants Daniel Aldana and Donna Matney were each charged with two counts of grand theft, and one count each of misappropriation of public funds, knowingly keeping false accounts, and altering public records. A jury acquitted Aldana of all but one count. The jury was unable to reach a verdict as to one count against Matney, and similarly acquitted her of all but one of the remaining counts against her. The jury also found not true all sentencing enhancements alleged against Aldana and Matney.

■ Aldana and Matney separately appeal their convictions for violating subpart 3 of Penal Code section 424, subdivision (a), which prohibits those charged with control over the expenditure of public moneys from keeping false accounts or making false entries in accounts.[1] Matney, a hospital administrator, had hired Aldana to perform administrative services at a county hospital, in addition to his regular duties as a physician at the same hospital. Matney obtained Aldana's signature on blank timesheets (each of which covered a two-week time period), estimated and averaged the number of hours Aldana performed administrative duties, and prepared and signed Aldana's timesheets, thereby authorizing Aldana's paychecks. The timesheets did not accurately reflect the hours Aldana worked for the county on each individual day during the two-week period, although the evidence showed,

---

[1] All further statutory references are to the Penal Code, unless otherwise specified. Hereafter, we will refer to the various subdivisions of section 424 in the following form: section 424(a)(1), etc.

and the Attorney General does not dispute, Aldana worked many more hours than he was paid for or than were listed on his timesheets.

In our original opinion, we concluded there was insufficient evidence to support Aldana's conviction on the single count because, under the relevant statute, Aldana was not an "officer of this state, or of any county, city, town, or district of this state, [or a] person charged with the receipt, safekeeping, transfer, or disbursement of public moneys." (§ 424(a).) Additionally, there was insufficient evidence Aldana knowingly kept a false account or knowingly made a false entry on his timesheets. Therefore, we reversed the judgment against Aldana.

We further concluded the prosecution was required to prove that Matney had knowledge her actions constituted criminal conduct, or that she was criminally negligent in lacking such knowledge. Because proof of Matney's guilty knowledge was insufficient, we reversed the judgment against her.[2]

The California Supreme Court granted review, and transferred the case back to us for reconsideration in light of its opinion in *Stark v. Superior Court* (2011) 52 Cal.4th 368 [128 Cal.Rptr.3d 611, 257 P.3d 41] (*Stark*). At our request, the parties filed supplemental briefs addressing the effect of *Stark* on this case.

As to Aldana, the Attorney General concedes that our original conclusion was not affected by the Supreme Court's opinion in *Stark*. Therefore, we again hold the judgment against Aldana must be reversed.

As to Matney, the evidence shows the timesheets, as a whole, were not materially false. There is no evidence that any public moneys were misused, lost, misappropriated, or placed at risk, or that anyone was unjustly enriched by virtue of the timesheets. The evidence shows the county paid Aldana less than he was owed for the number of hours he worked. Therefore, we hold there was insufficient evidence to support Matney's conviction, and reverse the judgment against her.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In April 2000, Matney was named the hospital administrator at Riverside County Regional Medical Center (the Medical Center), and assumed full control in January 2001. At the time, the Medical Center faced a deficit of

---

[2] In our original opinion, we rejected Aldana's and Matney's claims that the jury was erroneously instructed regarding the element of intent. We need not reach that issue in this opinion.

$18 million. Matney regularly worked 16 hours per day, seven days a week. She had responsibility for 2,000 employees, and oversaw the operations of a 364-bed acute care facility, a 77-bed psychiatric facility, and a level II trauma center. Matney was "absolutely overwhelmed" in her job. Nevertheless, Matney was able to turn the Medical Center around financially, and leave it $11.2 million in the black by June 30, 2001.

Aldana was a physician practicing at the Medical Center. He received a salary through his medical group, Riverside Regional Pediatric Medical Group, and served as the head of the pediatric unit at the Medical Center. Aldana received an additional salary from his medical group for his duties as a physician-liaison for hospital risk management.

In December 2000, Matney hired Aldana as an administrative liaison in risk assessment for the Medical Center. Aldana was compensated through the temporary assistance pool program (TAP), which provides county funds so county agencies may hire workers on a temporary basis to fill the agencies' needs. Aldana was paid $81.88 per hour as a TAP employee. He worked for the Medical Center through TAP from December 28, 2000, through July 25, 2002. There is no dispute that Matney had the authority to hire Aldana in that capacity.

TAP required employees to report their actual hours worked during each pay period, and required supervisors to certify the hours the employees worked. Aldana signed blank TAP timesheets, and provided them to Matney, who filled in the number of hours worked each day, on Aldana's behalf, and signed them to indicate her approval. Each timesheet covered a two-week period, and required the TAP employee to fill in the hours worked each day, as well as the total hours worked for the full two-week period.

Both Matney and Aldana[3] acknowledged the timesheets did not accurately reflect the actual hours Aldana worked on any particular day. Matney explained it was impractical and impossible considering the nature of Aldana's administrative consulting work—given that he was available to Matney 24 hours a day, seven days a week—as well as the time Aldana spent on his other duties at the Medical Center and elsewhere. Aldana was Matney's "copilot" during the time he assisted her in those administrative duties.

Matney did not keep track of the actual hours Aldana worked. Instead, Matney estimated and averaged the number of hours she recorded on Aldana's timesheets. Matney recorded hours on Aldana's timesheet for days

---

[3] Aldana did not testify at trial. The Medical Center's former chief of staff testified Aldana told him, while Aldana was still employed at the Medical Center, that in essence Aldana's timesheets "didn't necessarily reflect reality."

she knew he did not work, including his wedding day, because he had worked previously during the time period covered by the timesheet, and Matney believed the county owed him money for the time he had already worked.

Aldana was also paid with TAP funds for producing 10 paintings for the Medical Center's pediatric unit. In a letter to the Medical Center's chief operating officer, Aldana stated he had asked Matney to track the time he spent painting, and, in response, Matney reflected those hours on Aldana's timesheets. Matney never asked Aldana how much time he spent painting, as opposed to his administrative tasks, for TAP. Based on investigations of the cost of artwork conducted by her and her assistant, Matney decided Aldana was entitled to $30,000 in total for his 10 paintings, and recorded hours on Aldana's timesheets to reach that figure.

Matney testified she had no purpose or intent to defraud, and did not actually defraud, the county.

In an information, Aldana and Matney were each charged with two counts of grand theft (§ 487, subd. (a)), and one count each of misappropriation of public funds (§ 424(a)(1)), knowingly keeping false accounts (§ 424(a)(3)), and altering public records (§ 424(a)(4)). The information alleged as sentencing enhancements that Aldana and Matney had committed two or more related felonies involving fraud or embezzlement which resulted in the theft of more than $100,000 (§ 186.11, subd. (a)(1)), and that Aldana and Matney had taken property in the commission of a felony with intent, causing a loss of more than $150,000 (§ 12022.6, former subd. (a)(2)).[4]

A jury convicted Aldana and Matney only of knowingly keeping false accounts under section 424(a)(3).[5] Aldana and Matney were acquitted of grand theft and altering public records. Aldana was acquitted of misappropriation of public funds; the jury could not reach a verdict on that count against Matney, a mistrial was declared, and the count was later dismissed. The enhancement allegations were found by the jury to be untrue. Aldana and Matney were each placed on formal probation for three years.

---

[4] Effective January 1, 2008, section 12022.6, subdivision (a)(2) was amended to increase the amount of the loss to $200,000. (Stats. 2007, ch. 420, § 1, p. 3675.)

[5] "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who . . . [¶] . . . [¶] 3. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same . . . [¶] . . . [¶] Is punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state." (§ 424(a)(3).)

DISCUSSION

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225].) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) We may reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support' " the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

I.

*ALDANA'S CONVICTION*

Aldana argues he was not within the class of persons subject to prosecution under section 424(a)(3). The statute applies to "[e]ach officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys." (§ 424(a)(3).) Aldana is not an officer of the county. (See Gov. Code, § 24000; *People v. Rosales* (2005) 129 Cal.App.4th 81, 85 [27 Cal.Rptr.3d 897].)

██ Was Aldana "charged with the receipt, safekeeping, transfer, or disbursement of public moneys"? No. "Courts have recognized the Legislature's intent [in enacting section 424] to hold public officers specially accountable. Those 'who either retain custody of public funds or are authorized to direct the expenditure of such funds bear a peculiar and very grave public responsibility, and . . . courts and legislatures, mindful of the need to protect the public treasury, have traditionally imposed stringent standards upon such officials. [Citations.]' [Citation.] [¶] Because of the essential public interest served by the statute it has been construed very broadly. The state Courts of Appeal have held that 'to be charged with the receipt, safekeeping, transfer, or disbursement of public moneys' within the meaning of section 424 requires only that the defendant have *some degree of control over public funds* and that control need not be the primary function of defendant in his or her job." (*People v. Groat* (1993) 19 Cal.App.4th 1228, 1232 [24 Cal.Rptr.2d 15] (*Groat*), italics added.)

In *Groat*, the defendant prepared and signed her own timecards, and no other signature on the timecards was required for the defendant to be paid.

(*Groat, supra,* 19 Cal.App.4th at p. 1230.) The defendant's timecards reflected she had been at work or been sick when, in fact, she was teaching at a local college. (*Id.* at pp. 1230–1231.) The court concluded the ability of a public employee to authorize his or her own pay charges that employee with the disbursement of public moneys, and therefore subjects him or her to liability under section 424. (*Groat, supra,* at pp. 1233–1234.) This is a far cry from the present case. Aldana was not able to authorize his own pay, as the evidence was undisputed that he submitted his signed but otherwise blank timesheets to Matney not only for her approval, but also for completion by her.

The parties have cited no case, and we have found none, creating criminal liability under section 424(a)(3) for a public employee who merely signs a timesheet or receives a paycheck, when that employee has no control over the disbursement of the money. If the mere act of a public employee signing or submitting his or her own timesheet for approval were sufficient to create criminal liability under section 424(a)(3), the phrase "charged with" in the statute would be devoid of any meaning. "To charge" means to "entrust with responsibilities or duties." (Black's Law Dict. (9th ed. 2009) p. 265.) Not every public employee is entrusted with responsibilities or duties regarding the receipt, safekeeping, transfer, or disbursement of public moneys, and no evidence was presented in this case that Aldana had any such responsibilities. To the contrary, there was evidence that Matney was the person entitled to authorize Aldana's TAP payments, and Aldana's TAP payments would not have been processed without Matney's signature on his timesheets.

While we agree with the holding and analysis of *Groat,* and apply them here, we note that *Groat* describes another case in a way that could lead to confusion and misapplication of section 424. *Groat* states that, in *People v. Evans* (1980) 112 Cal.App.3d 607, 615–616 [169 Cal.Rptr. 240], section 424 "was held to apply to a county eligibility worker because her authority to complete emergency check requisitions for clients was the first step in the process of disbursing that public money." (*Groat, supra,* 19 Cal.App.4th at p. 1233.) *People v. Evans* actually found criminal liability under section 424 because the county eligibility worker "had the authority to complete the emergent aid requisitions necessary to expedite the issuance of checks to public assistance recipients." (*People v. Evans, supra,* at p. 616.) This is an important distinction. No case, including *Groat,* has held that being only the first step in a process that results in the expenditure of public funds is sufficient to establish criminal liability under section 424 absent approval authority. As the *Groat* court explained, it is the ability to control the public moneys that is key.

Aldana also argues there was insufficient evidence he knowingly kept a false account or knowingly made a false entry in an account. The evidence

was undisputed that Aldana signed his TAP timesheets when they were blank, with the understanding that Matney would complete the timesheets, sign them, and submit them for payment.[6] Under these circumstances, it would not be possible for Aldana to *knowingly* make a false entry on his timesheet, because he did not make *any* entry on his timesheet.

For all of these reasons, and under the weight of these authorities, we conclude there was insufficient evidence to convict Aldana of violating section 424(a)(3), and reverse the judgment against him.

## II.

### MATNEY'S CONVICTION

Matney argues there was insufficient evidence that Aldana's timesheets were false within the meaning of section 424(a)(3). She concedes, as she must, given the evidence, that the hours Aldana worked each day as a TAP employee were not accurately recorded. Matney contends she cannot be liable under section 424(a)(3), however, unless the timesheets were *materially false.*

In *Stark, supra,* 52 Cal.4th 368, the California Supreme Court addressed the mental state necessary to violate various subdivisions of section 424. In contrast to the other subdivisions of the statute analyzed in *Stark,* the court concluded that section 424(a)(3) can be violated merely by knowingly keeping a false account: "We address separately the mental state required for a violation of section 424(a) 3, which applies to a defendant who '[k]nowingly keeps any false account . . . .' Unlike the provisions of section 424 discussed above, section 424(a) 3 does not mention any 'authority of law.' The offense expressly requires that a defendant act 'knowingly.' The word 'knowingly' is defined in section 7 as follows: '5. The word "knowingly" imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission.' [Citation.] Thus, under this definition, a person violates section 424(a) 3 if he or she keeps an account with knowledge that the account is false." (*Stark, supra,* at pp. 403–404.)

---

[6] This process was consistent with the process by which Aldana received payment for his regular work as a physician, in which an administrative assistant prepared his monthly time records. Physician timecards did not reflect the actual hours worked, but were a mechanism to obtain for the physicians an appropriate fraction of their annual salary on a monthly or bimonthly basis. Because TAP employees were paid on an hourly rather than a salaried basis, the method of maintaining TAP time records should be different. However, Dr. Benson Harer, the former chief of staff at the Medical Center, who performed his physician duties as a TAP employee, always recorded eight hours per day on his TAP timesheet, although he might have worked more hours or fewer hours on any given day. Dr. Harer testified the TAP timesheet was simply a mechanism for getting paid.

Matney admits the hours recorded for individual days do not necessarily reflect the hours Aldana worked on those specific days. Matney argues there was insufficient evidence that any false entries on the timesheets were material, and materiality of the false entries is a necessary element that must be proven by the prosecution in order to obtain a felony conviction. This legal question is not addressed by *Stark*, which reached the Supreme Court after the defendant filed a petition for a writ of mandate or prohibition challenging the trial court's failure to set aside a grand jury indictment under section 995, subdivision (a)(1)(B). (*Stark, supra,* 52 Cal.4th at pp. 376–379.)

For the reasons we explain, we hold that section 424(a)(3) requires that any "false account" or "false entry" be materially false.

The tort of civil fraud requires proof that the misrepresented fact be material. (*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 100–101 [237 P.2d 656]; *Bower v. AT&T Mobility, LLC* (2011) 196 Cal.App.4th 1545, 1557 [127 Cal.Rptr.3d 569].) Nothing in the law justifies imposing liability for a form of criminal fraud without proof of materiality. Indeed, in the petition for rehearing of our original opinion, the Attorney General conceded that materiality of the falsity of the records is a necessary element of a violation of section 424(a)(3), and that there was insufficient evidence the timesheets were materially false. In the petition for rehearing, the Attorney General argued our original opinion was in error for requiring the prosecution to prove Matney either had knowledge her actions constituted criminal conduct, or was criminally negligent in lacking such knowledge. (As noted, *ante,* that issue was resolved by *Stark.*) At the same time, however, the Attorney General agreed that the reversal of Matney's conviction was appropriate because there was insufficient evidence of the materiality of any false statements in the timesheets. "[The Attorney General] does not disagree with the Court's conclusion that the evidence was insufficient to convict appellant Matney of a violation of [section 424,] subdivision (a)(3). As the court noted, Aldana worked more hours than Matney reflected on his time sheets. The only purpose of the time sheets was to fix Aldana's pay. Thus, to the extent the time sheets included 'false' or inaccurate entries, those entries were not material. That is to say, the false entries did not result in the loss or misappropriation of public funds, did not compromise reliance on a public record, nor did they result in the unjust enrichment of anyone. Necessarily, subdivision (a)(3), which defines a felony offense, must imply a materiality element and that is what was missing in the record below."

The evidence in this case shows the timesheets, as a whole, were not materially false. Aldana's timesheets, which were admitted in evidence at trial, show that, over two-week periods, Aldana performed 80 hours of work. Though the hours claimed on any individual day might not have been

accurate, there was *no evidence* that Aldana did not provide at least 80 hours of work under TAP during any of those two-week periods.

Although there was evidence that Aldana received public moneys in his paycheck for working on particular days that he did not actually perform any work, the evidence was undisputed that, in total, Aldana worked many more hours under TAP than the hours recorded on the timesheets for which he was compensated. In this case, there is no evidence that any public moneys were misused, lost, misappropriated, or put at risk, or that Aldana, Matney, or anyone else was unjustly enriched by virtue of the false or inaccurate timesheets. The evidence shows the county might actually have paid Aldana less than the amount he was owed for the number of hours he worked.

The jury acquitted Aldana and Matney of grand theft, and acquitted Aldana of misappropriation of public funds.[7] Therefore, the jury must have found the TAP payments to Aldana, in and of themselves, did not result in any loss to the county.

We conclude there was insufficient evidence that Matney knowingly kept a materially false account or knowingly made a materially false entry in an account. The judgment against her for violating section 424(a)(3) must be reversed.

This conclusion is consistent with the purpose of section 424—to protect the public purse. "[T]he subject matter and the language of section 424 clearly indicate that the legislative mind was intently concerned with the single, specific subject of the safekeeping and protection of public moneys and the duties of public officers in charge of the same." (*People v. Dillon* (1926) 199 Cal. 1, 6 [248 P. 230].) A conviction for authorizing a timesheet that is technically false, although the falsity is not material and does not negatively affect the public purse, would not further the statute's purpose and intention. We note, however, that our holding does not insulate from criminal liability the acts of a person covered by this statute whose material false accounts or material false entries put monies of the state or a municipality at risk of loss, even if a profit is made.

---

[7] Section 424(a)(1) makes it a crime to misappropriate public funds: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who . . . [¶] 1. Without authority of law, appropriates the same, or any portion thereof, to his or her own use, or to the use of another . . . [¶] . . . [¶] Is punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state." Section 487, former subdivision (a), defines grand theft as "theft committed in any of the following cases: [¶] (a) When the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400) . . . ."

## DISPOSITION

The judgments are reversed, and the trial court is directed to enter judgments of acquittal in favor of Aldana and Matney.

Aronson, Acting P. J., and Ikola, J., concurred.