Filed 4/15/15

**CERTIFIED FOR PARTIAL PUBLICATION\***

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 051060 |
| | ) | |
|     Plaintiff and Respondent, | ) | (Airport Trial Court |
| | ) | No. 2WA00673) |
|     v. | ) | |
| | ) | |
| FRANCIS SHIVERS, | ) | |
| | ) | |
|     Defendant and Appellant. | ) | **OPINION** |
| | ) | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Sanford M. Passman, Esq., for Defendant and Appellant.

Michael N. Feuer, Los Angeles City Attorney, Debbie Lew, Assistant City Attorney, and Kent J. Bullard, Deputy City Attorney, for Plaintiff and Respondent.

\*    \*    \*

_____

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.A.

## I. *INTRODUCTION*

Defendant Francis Shivers appeals the judgment following his conviction of violating a restraining order and electronically distributing a harassing message (Pen. Code, §§ 273.6, subd. (a), 653.2, subd. (a), respectively). Regarding the restraining order charge, defendant contends the court misinstructed the jury, erroneously failed to instruct sua sponte on self-defense, and erred in answering the jury's question. Concerning the harassing message charge, defendant contends there was insufficient evidence presented at trial, and the court failed to properly instruct the jury on the elements of the offense. As discussed below, we affirm.

## II. *FACTS PRESENTED AT TRIAL*

Laura Pauley Perrette and defendant were divorced in 2004, and Perrette obtained a restraining order against defendant in 2006. The order prohibited defendant from, inter alia, harassing, threatening, following, stalking, molesting, or disturbing the peace of Perrette, and from coming within 100 yards of her.

On March 20, 2012, Perrette and her fiancé, Thomas Arklie, went to a restaurant on Franklin Avenue in Hollywood. Perrette and Arklie were seated at a table at the end of a row of tables along a wall that started at the entrance to the restaurant. At approximately 7:30 p.m., defendant and his wife, Mayra Dias Gomes, entered the restaurant. The only available table was the one next to where Perrette and Arklie were sitting. As defendant and Gomes were escorted by a waitress toward the direction of Perrette's table, defendant told the waitress, "I cannot sit over there."

Perrette and Arklie testified defendant got within eight inches to one foot from Perrette's face, and smirked and smiled. Perrette became very upset, shrunk into her chair, and covered her face with her hands. Defendant pulled out his cell phone, held it out towards Perrette, and walked backwards while appearing to use the phone's video function. Arklie stood up from where he was seated, got in front of the table, and positioned his body to block defendant's view of Perrette. Arklie, who was about 12 feet away from where defendant was holding his phone, stood next to the table, and told defendant, "You are not allowed to do that here." Arklie held

his hand up in front of his face to avoid being taped. He denied threatening or assaulting defendant.

As defendant backed away, pointing his camera in Perrette's direction, he screamed, "I have a restraining order against her. I have a restraining order against her." Video captured by defendant's camera phone was taken from near the restaurant's entrance, and it showed the table where Perrette and Arklie were sitting. On the video, defendant pointed to the table and stated, "He just threatened me. He just came at me threatening me." Gomes responded, "I know, I saw." Defendant asked, "You saw?" to which Gomes responded, "Yeah." Defendant shouted, "Could you tell the manager here that I have a restraining order on that other person," and "He just came at me threatening me." Patrons at the restaurant turned around to see why defendant was shouting. Perrette was extremely embarrassed by the commotion. Perrette called 911 to report a violation of the restraining order. Prior to the police arriving, defendant left the restaurant.

Gomes testified that when she and defendant reached the table next to Perrette, defendant immediately returned to the front of the restaurant and did not get near Perrette's table. Gomes also testified she felt threatened by Arklie, "the way that he suddenly got up from the table and came at us seemed . . . threatening."

With regard to the Penal Code section 653.2 charge, Perrette testified that, starting a few years prior to 2012, defendant began posting comments about her on his Twitter website. Perrette was an actor on the CBS television series "NCIS," and persons who searched "#NCIS" or Perrette's name on Twitter would find defendant's posts. Defendant repeatedly posted messages, or "tweeted," that Perrette "stalked" him and made death threats against him, although Perrette had not done so. Defendant also falsely tweeted he had "restraining orders" against her. Perrette lived in the area of Cahuenga Boulevard and Franklin in Hollywood, and many of defendant's tweets referenced this area, alerting people to be on the lookout for Perrette. Several of defendant's tweets were made in response to persons who had accessed his original tweets, and some of his tweets were also reposted, or "retweeted," by third parties onto

their Twitter pages.  A tweet posted by defendant on April 8, 2012, appeared to reference the incident at the restaurant: "my wife [and] I went to our favorite restaurant, but [Perrette] was waiting for us so we left."

The tweets posted on July 4, 2012, and July 8, 2012, which were the basis for the Penal Code section 653.2 charge, stated, respectively, "HAPPY FOURTH OF JULY EVERYONE. SEE YOU ON MY USUAL HANGOUT, CAHUENGA!! (If you see my stalker Pauley Perrette follow me there call LAPD!!!" and "Speakin of #Cahuenga i'll be there 2nite as usual.  If you see my stalker #NCIS Pauley Perrette follow me there report her to LAPD immediately!" (Capitalization in original.)

## III. *DISCUSSION*

A.     <u>Penal Code section 273.6</u>[1] [Not Certified for Publication]

1.     *Misinstruction of the jury*

Defendant contends the court failed to correctly instruct the jury concerning the elements of Penal Code section 273.6, subdivision (a).  "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] . . . ."  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Penal Code section 273.6, subdivision (a), provides it is a misdemeanor for a defendant to commit "Any intentional and knowing violation of a protective order . . . ."  The court provided the jury with an instruction based on CALCRIM No. 2701.  The court instructed that the People had to prove: "One, a court issued a written order that the defendant stay 100 yards away and must not harass, follow, disturb the peace, keep under surveillance, contact, telephone, or send messages or mail or email or take any action to obtain the location of the protected person. [¶] . .

---

[1]Defendant asserts at the start of his appellate brief, in a section entitled, "Questions Before this Court," among other contentions, that the court erred in "failing to inquire of the Defendant as to his desire to have an instruction of self defense [*sic*] given to the jury," and in not granting his motions for an acquittal and a new trial.  Defendant repeats in his "Conclusion" that the court erred in failing to grant the two motions, but he does not otherwise argue or develop any of these contentions.  We therefore determine the contentions are forfeited.  (See *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)

. The second element [is] the court order was a protective order issued under Family Code section 6218. [¶] The third element [is] the defendant knew of the court order. [¶] The fourth element is the defendant had the ability to follow the court order. [¶] And the fifth element is the defendant intentionally violated the court order. [¶] The People must prove the defendant knew of the court order and that he had the opportunity to read the order or otherwise become familiar with what it said. [¶] But the People do not have to prove that the defendant actually read the court order."

Defendant argues the instruction was invalid because it did not inform the jury that defendant had to intentionally and *knowingly* violate the order. Defendant maintains the omission of the word "knowingly" improperly prevented the jury from considering whether defendant "acted with full knowledge that his conduct would capture Perrette on video."

Yet, a violation of the restraining order could have occurred even if defendant had not videoed Perrette. Defendant could have been convicted based on coming within eight inches to one foot of her, or disturbing her peace by falsely shouting in the restaurant that he had "a restraining order against her." Moreover, there was no requirement the People needed to show defendant knew his acts were unlawful. The requirement in Penal Code section 273.6, subdivision (a), that a defendant commit a "knowing violation of a protective order" only refers to the requirement the defendant must know the order exists and be aware of what it states. (See *People v. Saffell* (1946) 74 Cal.App.2d Supp. 967, 979.) Penal Code section 273.6 requires only general criminal intent (see *People v. Greenfield* (1982) 134 Cal.App.3d Supp. 1, 4), meaning a violation may be proved by showing defendant knew of the contents of the order, and intended to do a proscribed act, such as harassing, disturbing the peace, or coming within 100 yards of Perrette. The People and defendant stipulated at trial the restraining order was in full force and effect on the night of the incident, and that defendant had knowledge of the existence of the order. The court therefore did not err in instructing the jury that one of the elements of the offense was that "the defendant knew of the court order," and that the People had to prove this element.

### 2. *Failure to instruct on self-defense*

Defendant contends the court erred in not instructing the jury sua sponte on the defense of self-defense. Defendant cites no authority holding self-defense can be a proper defense to violating a restraining order. (See *People v. Foote* (2001) 91 Cal.App.4th Supp. 7, 12 ["A failure to cite any relevant authority in support of an assertion results in a waiver of the right to appellate review of that assertion"].)

Even assuming self-defense could be a proper defense to violating a restraining order, no self-defense instruction was required. Because there was no request at trial by defendant to instruct on self-defense, the court only had a duty to instruct on its own motion "if it appear[ed] that the defendant [was] relying on such a defense, or if there [was] substantial evidence supportive of such a defense and the defense [was] not inconsistent with the defendant's theory of the case." (*People v. Sedeno* (1974) 10 Cal.3d 703, 716.) Defendant's counsel did not argue self-defense to the jury. But, self-defense would not have been inconsistent with defendant's theory of the case, which was that defendant acted reasonably and thereby did not violate the restraining order. Thus, we must discern whether there was evidence "sufficient to 'deserve consideration by the jury, i.e., "evidence from which a jury composed of reasonable men could have concluded"' that the particular facts underlying the instruction did exist. [Citation.]" (*People v. Wickersham* (1982) 32 Cal.3d 307, 324.)

The defense of self-defense requires a defendant to act with the subjective fear that he is in imminent danger of suffering bodily injury or being touched unlawfully, and the fear must be objectively reasonable. (See *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.) Gomes testified she felt threatened by "the way [Arklie] suddenly got up from the table and came at [her and defendant]." But, the undisputed evidence at trial only showed that Arklie stood up from his table and, without approaching defendant or Gomes, positioned himself next to the table to block defendant's view of Perrette. He made no aggressive motion or threatening gesture; rather, he just lifted his hand in a protective fashion to cover his own face from being filmed. Arklie did not say anything threatening, did not have a weapon, and got no closer than 12 feet

from defendant and his wife when he told defendant not to video Perrette. These actions were insufficient to excite the fears of imminent harm by a reasonable person, and the court was thus not required to instruct the jury on self-defense.

### 3.   *Answering the jury's question*

While the jury was deliberating, it asked the court the following written question: "Does the restrained person in a restraining order have a right to defend him or herself if he or she is threatened even if it potentially violates said restraining order?" The court answered the question in writing: "Self defense is not a defense to any charge under the circumstances of this case. It is up to you to decide if any person's conduct was reasonable under the circumstances."

Defendant contends the court erred in answering the question because it should have informed the jury that self-defense was available in the case. In light of our determination that there was insufficient evidence from which a jury could have concluded the particular facts underlying self-defense existed, the court did not abuse its discretion in answering the jury's question. (See *People v. Beardslee* (1991) 53 Cal.3d 68, 97 [a court's answer to a jury question is reviewed for abuse of discretion].)

[The balance of the opinion is to be published.]

## B.   Penal Code section 653.2

### 1.   *Sufficiency of evidence*

Defendant contends there was insufficient evidence presented to convict him of violating Penal Code section 653.2. He argues there was no proof defendant's tweets *actually incited* any third parties to commit unwanted physical contact, injury, or harassment of Perrette. He also argues there was no evidence the tweets *actually produced* any unwanted physical contact, injury, or harassment by third parties. We review issues concerning statutory interpretation de novo. (*People v. Lofchie* (2014) 229 Cal.App.4th 240, 250.)

Penal Code section 653.2, subdivision (a), provides a person is guilty of a misdemeanor if he, "with intent to place another person in reasonable fear for his or her safety, or the safety of the other person's immediate family, by means of an electronic communication device, and without consent of the other person, and for the purpose of imminently causing that other person unwanted physical contact, injury, or harassment, by a third party, electronically distributes, publishes, e-mails, hyperlinks, or makes available for downloading, personal identifying information, including, but not limited to, a digital image of another person, or an electronic message of a harassing nature about another person, which would be likely to incite or produce that unlawful action." The statute defines "harassment" as "a knowing and willful course of conduct directed at a specific person that a reasonable person would consider as seriously alarming, seriously annoying, seriously tormenting, or seriously terrorizing the person and that serves no legitimate purpose." (Pen. Code, § 653.2, subd. (c)(1).) "Of a harassing nature" is defined as "of a nature that a reasonable person would consider as seriously alarming, seriously annoying, seriously tormenting, or seriously terrorizing of the person and that serves no legitimate purpose." (Pen. Code, § 653.2, subd. (c)(2).)

In interpreting the statute, we seek to ascertain the intent of the Legislature by first examining the statute's "'"words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' [Citation.]" (*People v. King* (2006) 38 Cal.4th 617, 622.)

Penal Code section 653.2, subdivision (a), specifies that a person is guilty if he or she electronically distributes a harassing message "which would . . . *likely* . . . incite or produce" the third party's action. Defendant's reading of the statute eliminates the modifier "likely," and would criminalize the proscribed acts only if a person's message "incite[d] or produce[d]" unlawful action. "'[A] statute should not be given a construction that results in rendering one of its provisions nugatory. [Citations.]' [Citation.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.'

[Citation.]" (*People v. Hicks* (1993) 6 Cal.4th 784, 796, fn. omitted.) The plain meaning of the words used reveals no requirement that *actual* incitement or *actual* production of the enumerated unlawful effects be caused by a person's electronic distribution of a message. The only requirement is that a defendant's message is likely to incite or produce third party actions.

Defendant further argues the evidence was insufficient because the prosecution did not prove defendant tweeted with the specific intent to incite or produce any unlawful action by third parties. "'"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citation.] We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. [Citation.]" (*People v. Aldana* (2012) 206 Cal.App.4th 1247, 1253.) Evidence of specific intent is rarely proved with direct evidence; rather, "'such intent must usually be inferred from all of the facts and circumstances disclosed by the evidence.'" (*People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, 1765.)

The circumstantial evidence was sufficient to permit a reasonable trier of fact to conclude defendant acted with intent to incite or produce unlawful action by a third party who read his messages. Defendant electronically distributed messages about Perrette using Twitter, which, as shown by the evidence at trial, is a public social networking website on the Internet where users can write and respond to short messages. Twitter constituted an "electronic communication device" within the meaning of the prohibited communications statute. (See Pen. Code, § 653.2, subd. (b) [including Internet web pages and websites within the definition of "electronic communication device"].) The evidence showed a person's tweets posted on Twitter can be read by the public and spread to the websites of other Twitter users by being retweeted, so that a single tweet may be repeated and disseminated throughout numerous web pages accessible to the public.

Defendant posted messages on Twitter such that persons searching for Perrette's name could find his tweets. Also, by using a hashtag for the show ("#NCIS") and the location ("#Cahuenga"), third parties searching on Twitter would also come across defendant's tweets. Several of the tweets were made in response to persons who had read defendant's tweets, and other tweets had been retweeted by third parties, indicating to defendant that third parties were accessing the information he posted and his tweets were being disseminated. The tweets leading up to the ones posted on July 4 and July 8, 2012, falsely indicated that defendant had a restraining order against Perrette and that she was stalking him and making death threats against him. The July 4 and July 8, 2012 tweets referenced the area of Cahuenga where Perrette lived. These tweets also referred to Perrette as defendant's "stalker," and requested that readers "call LAPD!!!" and "report her to LAPD immediately!" if they saw her following him in the area.

It can be inferred defendant knew that persons who encountered Perrette after reading his tweets could have been motivated to report her to the police for what they believed was her stalking him, or to otherwise harass her. (See Pen. Code, § 653.2, subd. (c)(1) [defining "harassment" as "conduct directed at a specific person that a reasonable person would consider as seriously alarming, seriously annoying, seriously tormenting, or seriously terrorizing the person"].) Given the nature of Twitter and the provocative contents of defendant's tweets, a reasonable trier of fact could conclude defendant posted his tweets with the specific intent to incite or produce unwanted physical contact, injury, or harassment at the hands of a third party.

2.     *Misinstruction of the jury*

The court instructed the jury that, to find defendant guilty under Penal Code section 653.2, the People had to prove: "One, the defendant by means of an electronic communication device and [*sic*] acted without the consent of [Perrette] electronically distributed or published an electronic message of a harassing nature; and [¶] Two, the defendant electronically distributed or published the electronic message about [Perrette] for the purpose of imminently causing [Perrette] unwanted physical contact or injury or harassment by a third party; and [¶] Three, the defendant distributed the electronic message and a reasonable person

would consider that electronic message likely to incite or produce unwanted physical contact, injury or harassment by a third party; and [¶] Four, the defendant at the time of the electronic distribution of the electronic message acted with the intent to place [Perrette] in reasonable fear for her safety or safety of her immediate family."

Defendant contends the instruction was faulty because it omitted the element in Penal Code section 653.2 that defendant's communication was one "which would be likely to incite or produce that unlawful reaction." "We review this claim, which involves the determination of applicable legal principles, under a de novo standard." (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.)

The court's instruction did not use precisely the same language as the statute, that is, it did not state the electronic communication must be such as it "would be likely to incite or produce that unlawful action." (Pen. Code, § 653.2, subd. (a).) Nevertheless, the instruction informed the jury that, to find defendant guilty, defendant's electronic message must have been made "for the purpose of imminently causing [Perrette] unwanted physical contact or injury or harassment by a third party," and was "likely to incite or produce unwanted physical contact, injury or harassment by a third party." When the statute is read as a whole, it is clear the language "that unlawful action" is a direct reference to "unwanted physical contact, injury or harassment." The jury instruction simply incorporated the more precise language in order to accurately define the offense.

Lastly, defendant argues the conviction should be reversed because the court failed to include in its instruction that the fear defendant intended to cause Perrette must be *of a third party's action*. We determine no misinstruction occurred.

Defendant's argument concerns the fourth paragraph of the instruction, wherein the court stated that to find defendant guilty, the jury was required to find "defendant at the time of the electronic distribution of the electronic message acted with the intent to place [Perrette] in reasonable fear for her safety or safety of her immediate family." This paragraph tracked the requirement in the statute that a person must act "with intent to place another person in

reasonable fear for his or her safety, or the safety of the other person's immediate family." (Pen. Code, § 653.2, subd. (a).) The plain meaning of the statute does not reveal any Legislative intent limiting the victim's fear to that of only third party unlawful actions. We thus refuse to add language to the statute which the drafters did not see fit to include, and instead adopt its plain meaning as controlling. (See *People v. King*, *supra*, 38 Cal.4th at p. 622.)

## IV. *DISPOSITION*

The judgment is affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**

_____

**RICCIARDULLI, J**.

**WE CONCUR.**

_____

**KUMAR, Acting P. J.**

_____

**JOHNSON (B.R.), J.**