Filed 4/27/21  P. v. Wooten CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANNY R. WOOTEN et al.,<br><br>    Defendants and Appellants. | B295326<br><br>Los Angeles County<br>Super. Ct. No. BA430233 |

APPEALS from judgments of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge. Affirmed as modified.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant, Danny R. Wooten.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant, Tyrone E. Collins.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General and Heidi Salerno, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Danny R. Wooten and Tyrone E. Collins appeal from the judgments entered upon their respective convictions and sentences on multiple counts of violating Penal Code[1] section 424, subdivision (a), section 504, and Government Code section 1090. Between 2003 and 2014, Wooten, a former employee of the City of Pasadena (the City), and Collins, an electrical contractor, collaborated to embezzle more than three million dollars from the City by submitting hundreds of fraudulent invoices for payment for construction work regarding a utility project.

Appellants assert numerous challenges to their convictions and sentences. Primarily, they argue they were improperly charged with multiple counts of violating section 424, subdivision (a), section 504, and Government Code section 1090. Appellants also argue the trial court failed to calculate their custody credits correctly. As we shall explain, only the argument concerning the custody credits has merit. Accordingly, we modify the judgments as to the conduct credits and affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1968, the City began the Underground Utility Program (UUP) to remove utility poles from City streets, place the utility lines underground, attach the underground lines to each property and remove the overhead lines. The UUP, which the City anticipated would take approximately 100 years to finish, was implemented in phases, neighborhood by neighborhood. As part of the UUP, homeowners had the option to hire contractors to

---

[1] All undesignated statutory references are to the Penal Code.

connect their houses to the underground lines, in which case the City would reimburse the homeowners for the cost of the work. The City also contracted directly with independent electrical contractors to do the connection work for some properties. In either case, the maximum reimbursement the City paid per property was $3,750.

Wooten worked for the City as a management analyst, assigned to the UUP to help property owners obtain reimbursement for the underground connection process and to assist contractors in obtaining payment for their work.

Collins owned and operated Collins Electric, an electrical contracting company that provided electrical work on City projects, including the UUP.

### 1. Appellants' Crimes

Between 2003 and 2014, Wooten and Collins worked together to steal funds from the City's UUP. Specifically, Wooten submitted hundreds of fraudulent invoices to the City on behalf of Collins Electric for electrical work for the UUP. The fake invoices submitted for Collins Electric included: invoices with a property address where the work permit was issued to a different company; invoices for work not completed on the properties until a decade later; invoices for non-existent addresses; multiple invoices for the same property address; and invoices for properties outside the project boundaries.

To carry out the schemes, Wooten created fake invoices for Collins Electric, obtained (or forged) the signatures of his City supervisors, and submitted the invoices for payment. He then delivered the checks to Collins, who, in turn, deposited them into his bank account. Shortly after that, Collins would give Wooten a "kickback" payment in the form of a check or bank-to-bank

3

transfer. Invoices for Collins Electric varied between $20,000 and $23,750, and some totaled $43,750. Between 2003 and 2014, the City issued 270 checks to Collins Electric, paying the company a total of $3,543,359 based on false invoices. During this same period, Wooten received $642,313 in kickback payments from Collins.

## 2. Criminal Schemes Involving Other Vendors

In addition to Wooten's crimes with Collins, between 2007 and 2013, Wooten also submitted false invoices for electrical work for the UUP on behalf of two churches that Wooten owned, Southern California Evangelistic Jurisdiction (SCEJ), and New Covenant Center Fellowship (NCCF). However, neither church performed any contracting or electrical services for the UUP. The fake invoices for SCEJ totaled $2,132,656, and the false invoices paid to NCCF totaled $712,810.49. In 2010, Wooten also submitted two false invoices for Melody Jenkins, a City employee.

## 3. The Charges and Convictions

In 2014, Wooten's immediate supervisor retired, and the City assigned a new supervisor to the UUP. At the behest of a City oversight committee, the newly appointed supervisor reviewed payments on the UUP. The review revealed the fraudulent invoices and overpayments to Collins Electric, SCEJ, and NCCF. A search of Collins's house and truck unearthed ten cashier checks that Collins had made payable to Wooten in amounts between $20,000 and $30,000.

Wooten and Collins were arrested. Wooten was charged with a total of 59 counts, alleging multiple violations of public officer crimes (§ 424, subd. (a)), embezzlement of the public funds of the City (§ 504), conflict of interest violations (Gov. Code §

1090), and various enhancements based on the amount of the thefts. (§ 1203.045, subd. (a) and § 186.11, subd. (a)(2).) Collins was charged with 20 counts of public officer crimes, embezzlement and the same enhancements as Wooten.

In November 2018, the jury found Wooten guilty of 19 counts of public officer crimes (§ 424, subd. (a)), 19 counts of embezzlement of public funds (§ 504), and 15 counts of conflict of interest for his conduct involving SCEJ and NCCF (Gov. Code, § 1090). The jury found Collins guilty of 10 counts of public officer crimes and 10 counts of embezzlement (§ 424, subd. (a) and § 504). The jury also found the enhancements alleged against Wooten and Collins true.

The trial court sentenced Wooten to 13 years in state prison, which included four years on the public officer crimes alleged in count 25, plus five years for the enhancement, and one year each for the public officer crimes alleged in counts 1, 4, 10, and 13. The court imposed concurrent three-year sentences on the remaining public officer crimes counts. Under section 654, the court also imposed and stayed three-year sentences on the embezzlement counts and the conflict of interest counts. The court sentenced Collins to six years in state prison, which included three years on the public officer crimes alleged in count 22, plus three years for the enhancement. The court imposed concurrent three-year sentences on the remaining public officer crimes counts and imposed and stayed under section 654 three-year sentences on the embezzlement counts.

Wooten and Collins filed timely notices of appeal.

## CONTENTIONS

Appellants raise multiple challenges to their respective convictions and sentences. First, Collins contends we should reverse his convictions of public officer crimes as a matter of law because he is not within the class of persons subject to section 424, subdivision (a)(1), and the evidence did not support those convictions. Second, appellants claim they should have been convicted of only one count of each of the crimes because their criminal conduct qualified as continuing offenses or because the offenses stemmed from the same intention, general impulse, and plan and thus they merged into a single crime. Third, appellants maintain they should not have been charged with both public officer crimes (section 424, subdivision (a)) and embezzlement of public funds (section 504) because those crimes are merely different statements of the same offense. Fourth, appellants argue the trial court erred by failing to stay all but one of their public officer crimes under section 654. Finally, appellants argue the trial court should have granted them additional custody credits.

## DISCUSSION

### 1.  Collins was properly charged and convicted of violating section 424, subdivision (a)(1).

On appeal, Collins assails his convictions of violating section 424, subdivision (a)(1), arguing that as a matter of law, he was not among the class of individuals who can be charged under the statute and that sufficient evidence did not support the convictions. As we explain, neither argument has merit.

Section 424, subdivision (a)(1), criminalizes the misappropriation of public money by a public officer, who is

charged with the safe-keeping of those funds.[2] Courts have recognized that laws concerning public officer crimes were enacted to safeguard the public treasury and ensure public confidence in the use of its money. (See *People v. Groat* (1993) 19 Cal.App.4th 1228, 1232 (*Groat*) [acknowledging purpose is to ensure custodians of public money hold and keep the funds inviolate, and use or disburse them only in strict compliance with the law and noting that "[b]ecause of the essential public interest served by the statute it has been construed very broadly"].)

### 1.1. Collins was properly charged as an aider and abettor under section 424, subdivision (a)(1).

Collins argues that he cannot be liable under section 424, subdivision (a)(1) as a matter of law because he was not a public officer nor held any other position in which he was responsible for public funds. Collins cites two cases, *People v. Hubbard* (2016) 63 Cal.4th 378 (*Hubbard*), and *People v. Aldana* (2012) 206 Cal.App.4th 1247 (*Aldana*), in support of this argument.

In *Hubbard*, the superintendent of a school district challenged his convictions under section 424, subdivision (a), arguing that he lacked the direct authority to control public

---

[2] Section 424 provides in pertinent part: "Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either . . . [w]ithout authority of law, appropriates the same, or any portion thereof, to his or her own use, or to the use of another … [i]s punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state." (§ 424, subd. (a)(1).)

7

funds, and thus, he could not be charged under the statute. (*Hubbard, supra,* 63 Cal.4th at pp. 386–387.) The Supreme Court disagreed, interpreting the scope of section 424, subdivision (a), to include the superintendent's fiduciary duties to safeguard the district's funds. The court also concluded that the evidence supported the jury's verdict that Hubbard exercised financial authority and was therefore properly " 'charged with the receipt, safekeeping, transfer, or disbursement of public moneys.' " (*Id.* at p. 392)

In *Aldana, supra,* 206 Cal.App.4th 1247, the court reversed a physician's conviction under section 424 for insufficient evidence. In that case, prosecutors charged an administrator of a public hospital and a physician with violations of section 424, subdivision (a). The physician worked in a hospital program that required him to report his hours on a timesheet signed by the administrator. (*Aldana, supra,* 206 Cal.App.4th at pp. 1250–1251.) The evidence showed the physician signed blank timesheets and that the administrator completed and submitted them for payment. (*Ibid.*) The *Aldana* court concluded that the physician could not be charged with violations of section 424 because he did not have sufficient control over funds to be held accountable under the statute. (*Id.* at pp. 1254–1255.)

In our view, *Hubbard* and *Aldana* are distinguishable from this case and do not support Collins's argument. First, unlike the defendants in *Hubbard* and *Aldana*, Collins was tried as an aider and abettor to Wooten on the section 424, subdivision (a) counts, not as a principal in those crimes. Nothing in *Hubbard* or *Aldana* precludes aider and abettor liability under section 424, subdivision (a).

8

In fact, *Hubbard* involved an entirely different question than this case. (See *Hubbard, supra,* 63 Cal.4th at p. 381 [identifying the question before the court as "whether the statute applies to all public officers, or only to those 'charged with the receipt, safekeeping, transfer, or disbursement of public moneys,'" and holding "that section 424 applies only to those public officers imbued with such responsibility over public moneys"].) *Hubbard* did not directly or implicitly consider the aider and abettor question at issue here. Likewise, *Aldana* did not address the matter either; the issue in *Aldana* centered on whether there was substantial evidence that the doctor, as a principal in the crimes, exercised sufficient control over the funds to be charged with a violation of the statute. Thus, neither *Aldana* nor *Hubbard* precludes an independent private contractor's conviction as an aider and abettor to a principal properly charged with a violation of section 424, subdivision (a).

Collins's suggestion that section 424, subdivision (a) liability has never been upheld for aiders and abettors is not well taken. Similar to this case, in *People v. Little* (1940) 41 Cal.App.2d 797 (*Little*), two defendants, Richards and her ex-husband Little, were charged with violating section 424, subdivision (a)(1). Richards was employed as a bookkeeper and collector for the city-owned-and-operated water system. She embezzled funds and sent the money to Little, who was not a city employee. The court observed that Little "advised and encouraged Mrs. Richards in her criminal acts." (*Id.* at p. 805.)

Like Collins here, Little challenged his conviction of section 424, subdivision (a), arguing that he could not be found guilty of violating the statute because he was not a public official " 'charged with the receipt, safe-keeping, transfer or

9

disbursement of public moneys.' " (*Little, supra,* 41 Cal.App.2d at p. 805.) The court rejected his argument, concluding that although Little was not a public employee, his guilt was properly premised on his status as an aider and abettor to Richards' violation of section 424, subdivision (a)(1). (*Ibid.*; see also *People v. Qui Mei Lee* (1975) 48 Cal.App.3d 516, 523 (*Lee*) [acknowledging that the defendant could be charged with aiding and abetting under section 424]; accord, *Webb v. Superior Court* (1988) 202 Cal.App.3d 872, 893–894, 898–899 (*Webb*) [(conc. opn. of Ardaiz, J.) relying on *Lee,* recognizing although the defendant was not a city official, the evidence supported a reasonable inference that he aided and abetted city officials in the misappropriation of city funds sufficient to support a conviction under section 424, subdivision (a)].) The Supreme Court has not explicitly or implicitly overruled *Little* or the other cases, such as *Lee*, that recognized aider and abettor liability for violations of section 424, subdivision (a). Consequently, we find no error as a matter of law in charging Collins with violations of section 424, subdivision (a) based on the theory that he aided and abetted Wooten.

### 1.2.  Substantial evidence supported Collins's section 424, subdivision (a) convictions.

We also reject Collins's suggestion raised in his reply brief that the evidence was insufficient to support his conviction as an aider and abettor.

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'

10

[Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft (*2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support' " the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Substantial evidence showed that Collins aided and abetted Wooten, a city official, to misappropriate the City's funds. Unlike the doctor in *Aldana,* who was a passive participant in the administrator's scheme, Collins was actively involved with Wooten's conduct and worked in concert with him to misappropriate City funds. After Collins received a check from Wooten, he put it in one of his accounts and then gave a total of $635,313 back to Wooten through checks and bank-to-bank transfers. The jury could reasonably infer that appellants worked together and Wooten could not have carried out the misappropriation without Collins's active participation. And based on this evidence, the jury reasonably found that Collins aided and abetted Wooten in the misappropriation of City funds. Accordingly, Collins has failed to demonstrate any error concerning his convictions of section 424, subdivision (a).

**2.     The People did not err in charging appellants with multiple counts of violating section 424, subdivision (a), section 504, and Government Code section 1090.**

Between 2004 and 2014, Wooten submitted hundreds of false invoices on behalf of Collins Electric, the two religious organizations, SCEJ and NCCF, and Melody Jenkins, to the City for work allegedly performed in the UUP. Rather than charge each fraudulent invoice as a separate offense, the People

11

aggregated the charges by year. Thus, as to Wooten's criminal scheme involving Collins Electric and Melody Jenkins, Wooten was charged with one count of violating section 424, subdivision (a) (public officer crimes) and section 504 (embezzlement of public funds) for every year between 2004 and 2014 that each scheme operated; as to SCEJ and NCCF prosecutors charged Wooten with one violation each of Government Code section 1090 (conflict of interest) for every year between 2007 and 2014. Collins was similarly charged with one count each of violation of section 424, subdivision (a), and section 504 for each year between 2004 and 2014.

Before this court, appellants argue that at most, they can be convicted of only one count of violating each statute. They articulate two distinct arguments in support of their contentions. First, they maintain that because their criminal scheme continued over time, their crimes amounted to a "continuing offense." Alternatively, they maintain that because their crimes involved one course of conduct, scheme, and plan to steal funds from a single victim, they can only be convicted of one count of each of the offenses based on *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey* doctrine). We address these contentions in turn.

**2.1.    None of the three statutory offenses qualifies as a continuing offense under the continuing offenses doctrine.**

The California Supreme Court explained the concept of a continuing offense as "[m]ost crimes are instantaneous since they are committed as soon as every element is satisfied. Some crimes, however, are not terminated by a single act or circumstance but are committed as long as the [illegal] conduct continues. Each day brings 'a renewal of the original crime or the repeated

12

commission of new offenses.' [Citation.] ... [¶] '[A] continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' [Citations.] [¶] Determining if a particular violation of law constitutes a continuing offense is primarily a question of statutory interpretation. [Citations.] The answer, however, does not depend solely on the express language of the statute. Equally important is whether 'the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.' [Citations.] [Fn. omitted.]" (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 525–526 (*Wright*).)

The doctrine of continuing offenses is applied only in a few limited circumstances where the law imposes a continuing duty to act or refrain from certain conduct. (*Id.* at p. 528.) As explained in *Wright,* examples of continuing offenses include the failure to register as a sex offender, drug possession, carrying a concealed weapon, cultivation of marijuana, unauthorized possession of food stamps, concealing stolen property, pimping, contempt of court for failure to pay child support, failure to provide for minor children, driving while intoxicated, maintaining a nuisance, and kidnapping. (*Id.* at p. 525, fn. 1.)

Appellants assert they were subject to one violation of each statute under the continuing offenses doctrine because their criminal actions were continuing crimes. However, appellants have not identified any case in which the offenses charged here have been characterized as continuing offenses. Nothing in the language, context, or nature of section 424, subdivision (a), section 504, or Government Code section 1090 suggests that a violation of these statutes is of the limited category of continuing

13

offenses. We observe from the statutory language that these crimes do not require an ongoing or continuous course of conduct, and thus "[b]y [the] terms" they do not "expressly state a continuing offense." (*Wright, supra,* 15 Cal. 4th at p. 526.) These are all offenses that are instantaneous: the violation is complete at the first instance the elements are met.

Specifically, section 424 criminalizes the misappropriation of public funds by public officials who are charged with the safe-keeping of those monies. (§ 424.) Likewise, section 504 criminalizes the embezzlement of public funds by a public official. (§ 504.) Each act of misappropriation and embezzlement constitutes a separate offense that is complete once it occurs. Unlike the failure to register as a sex offender or illegal weapons possession, each day does not bring a renewal of the original crime or the repeated new commission of the offense of sections 424, subdivision (a) and 504. Similarly, Government Code section 1090 prohibits public employees from having any personal financial interest in any contract they make in their official capacity. Although Government Code section 1090 imposes a duty upon public employees to avoid financial conflicts of interest, the statute does not impose an affirmative duty to take any particular action, the failure of which is an *ongoing* crime. Instead, a public employee violates section 1090 each time the individual enters into a new contract on behalf of the government in which the public employee holds a personal financial interest. Thus, nothing in sections 424, 504, or Government Code section 1090, takes them outside the usual category of instantaneous crimes. (See *Wright, supra,* 15 Cal.4th at p. 525.)

Moreover, we are not convinced that the nature of the crimes in this case qualifies them as continuing offenses. That

14

appellants violated these statutes numerous times over a decade does not transform the separate offenses into continuing offenses. The criminal acts at issue here—obtaining payments from the City after submitting hundreds of fraudulent invoices—were separate and discrete crimes; they were not the kind of activity that, by its nature, continued, as is the case with carrying a concealed weapon, cultivation of marijuana, or kidnapping. (See *Wright, supra,* 15 Cal.4th at p. 525, fn. 1.)

Thus, we conclude that appellants' violations of sections 424, 504, and Government Code section 1090 do not constitute continuing offenses.

## 2.2. The *Bailey* doctrine does not apply to appellants' convictions.

Alternatively, appellants argue that they should not suffer multiple convictions of section 424, subdivision (a), section 504, and Government Code section 1090 because they committed all the offenses under one plan, purpose, and intent—to steal from a single victim, the City. They maintain that given the nature of their conduct, all of their criminal conduct should have been charged as one violation of each statute under the *Bailey* doctrine. As we shall explain, the *Bailey* doctrine does not apply to violations of section 424, subdivision (a), and conflict of interest crimes under Government Code section 1090 as a matter of law. In addition, given the evidence in the case, the *Bailey* doctrine does not apply to the public embezzlement crimes charged under section 504.

### 2.2.1 Public Officer Crimes and Conflict of Interest Violations

In *People v. Bailey,* the Supreme Court created an exception to the general rule embodied in section 954 that permits multiple theft convictions for a single act or series of related criminal acts. In *Bailey,* the defendant received a series of welfare payments based on one fraudulent statement. Each welfare payment that the defendant received amounted to only petty theft, but she was charged and convicted of a single count of grand theft because the total amount of all the thefts, when aggregated, constituted felony grand theft. (*Bailey, supra,* 55 Cal.2d at pp. 515–516, 518.) The court concluded that a single conviction for grand theft was proper. In answering the question of whether multiple petty thefts could be aggregated to constitute one count of grand theft, the *Bailey* court reasoned that "where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute ... one offense of grand theft. [Citations.]" (*Id.* at pp. 518–519.) The court further observed that "[t]he test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.]" (*Id.* at p. 519.)

The court additionally stated its view that "[w]hether a series of wrongful acts constitutes a single offense, or multiple offenses depends upon the facts of each case, and a defendant

16

may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.]" (*Bailey, supra*, 55 Cal.2d at p. 519.)

Subsequent appellate decisions interpreted *Bailey* as being a two-sided coin. Courts applied what became known as the "converse" *Bailey* doctrine to prohibit multiple grand theft convictions when separate thefts were committed against a single victim pursuant to one intent, general impulse, and plan. (See, e.g., *People v. Jaska* (2011) 194 Cal.App.4th 971, 981 *(Jaska)*; *People v. Tabb* (2009) 170 Cal.App.4th 1142, 1148–1149 (*Tabb*).)

To determine whether the converse *Bailey* doctrine applied, appellate courts examined the nature of the underlying crimes. Accordingly, courts applied the converse *Bailey* doctrine where the statute quantified the harm and damage as an element of the offense. Such offenses permitted the prosecution to aggregate that harm or damage. The most common crimes falling into this category were theft offenses. Until recently, the converse *Bailey* doctrine entitled a defendant to a dismissal of all but one conviction for multiple theft crimes, even if each involved a complete criminal act, as long as the crimes were committed "pursuant to a single general impulse, intention or plan. [Citation.]" (*Tabb, supra*, 170 Cal.App.4th at p. 1150; see *People v. Brooks* (1985) 166 Cal.App.3d 24, 30–32 [theft]; *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 363–364 (*Kronemyer*) [same].)

In contrast, courts declined to apply the converse *Bailey* doctrine to crimes that did not monetize and aggregate harm or damage as part of the offense; thus, a defendant could be

17

convicted of multiple crimes—even if the crimes are part of the same impulse, intention, or plan—as long as each conviction reflected a completed criminal act. Many appellate courts limited the converse *Bailey* doctrine to cases of theft. (See, e.g., *People v. Neder (*1971) 16 Cal.App.3d 846, 852 (*Neder*) [holding that the *Bailey* doctrine, which was "developed for the crime of theft," should not be "extended to forgery"]; *In re David D.* (1997) 52 Cal.App.4th 304, 309 [recognizing that application of the *Bailey* doctrine "has been limited ... to the crime of theft"]; *People v. Drake* (1996) 42 Cal.App.4th 592, 597, 595 [declining "to extend the *Bailey* doctrine beyond theft offenses," and holding that the defendant was properly convicted of five separate counts of MediCal fraud based on five acts of false billing]; *People v. Washington* (1996) 50 Cal.App.4th 568, 575, 577, (*Washington*) [noting that the "test articulated in *Bailey* has been consistently applied in *theft* cases," and declining to apply *Bailey* to the crime of burglary because "the difference between theft and burglary makes application of the *Bailey* rule inappropriate"]; *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477, [following *Washington* in rejecting *Bailey'*s application to convictions for battery of a cohabitant]; *People v. Zanoletti* (2009) 173 Cal.App.4th 547, 559–560 [declining to extend it to submission of fraudulent insurance claims].)

In confining the converse *Bailey* doctrine to harm-focused crimes, courts recognized that expanding the doctrine further would exacerbate two of its undesirable side effects: The doctrine effectively grants wrongdoers a "felony discount" by assuring them only one conviction for a potentially limitless number of related offenses (*In re Arthur V.* (2008) 166 Cal.App.4th 61, 67), and it effectively displaced the legislative definitions of what

constitutes a completed crime with a new constellation of judicially created "continuous crimes" that come into being should all related burglaries, sex crimes or identity thefts be aggregated into a single "continuous crime." (*Washington, supra,* 50 Cal.App.4th at p. 578.)

In 2014, the Supreme Court revisited *Bailey* and the converse *Bailey* doctrine in *People v. Whitmer* (2014) 59 Cal.4th 733, 741 (*Whitmer*). The *Whitmer* court held that appellate courts had misinterpreted *Bailey* and concluded that a defendant could sustain multiple convictions "based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Whitmer,* at pp. 740–741.) In *Whitmer*, the defendant, the manager of a motorcycle dealership, arranged for the fraudulent sale of vehicles to fictitious buyers. The jury convicted him of 20 counts of grand theft for 20 fictitious sales. The 20 sales occurred on 13 different dates. Some of the transactions occurred on the same date and involved the same fictitious buyer; however, separate paperwork was completed for each transaction. (*Id.* at pp. 734–735.) Reasoning that each grand theft count was based on a separate and distinct act, the *Whitmer* court concluded a thief should not receive a "felony discount" if the thefts are separate and distinct even if they are similar. (*Id.* at pp. 736, 740–741 ["[A] defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme."].) However, *Whitmer* did not overrule *Bailey* but explained the "*Bailey* rule must be interpreted in light of its facts." *(Id.* at p. 740.) The court also recognized that its holding should not be applied retroactively because a "long, uninterrupted series of Court of Appeal cases … [had] consistently held that multiple

acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft." (*Id.* at p. 742; *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518.)

Appellants argue that the public officer offenses and the conflict of interest violations are essentially theft offenses to which the converse *Bailey* doctrine should apply because these violations were committed according to one plan, scheme, and intent to steal from the City. They assert that rather than multiple counts charged based on years, they should have been charged with only one count of each offense. They further assert that even though the *Whitmer* court limited *Bailey's* application, the converse *Bailey* doctrine remains viable for the crimes they committed before 2014. We are unconvinced.

The converse *Bailey* doctrine does not apply to either the public officer crimes or the conflict of interest violations charged in this case. Neither is a theft offense for which harm is monetized or aggregated.

Section 424, subdivision (a) targets how the public officer exercises control over public money. As we discussed, a defendant violates section 424, subdivision (a), when the defendant is a person "charged with the receipt, safekeeping, transfer, or disbursement of public moneys" and the defendant, "[w]ithout authority of law, appropriates the same, or any portion thereof, to his or her own use, or the use of another." (§ 424, subd. (a)(1).) In promulgating section 424, subdivision (a), the Legislature sought not to punish thieves as such but to hold public officers accountable for public money in their care and custody and to safeguard against the use or disbursement of public funds in a manner that violates the law. (*Groat, supra,* 19 Cal.App.4th at p. 1232.) The essence of the crime is not concerned with the dollar

amount that is taken. (See *People v. Battin* (1978) 77 Cal.App.3d 635, 657, superseded by statute on other grounds as explained in *People v. Connor* (1983) 34 Cal.3d 141, 147 [no specific dollar amount loss must be demonstrated to prove a violation of section 424].) Instead, the misappropriation of public funds by a public officer is concerned with how one commits the taking—by abusing his position of authority. Accordingly, a violation of section 424 "does not require proof of an intent to steal or misappropriate, but rather the intentional doing of an act that results in the misappropriation. [Citation.]" (*Webb, supra,* 202 Cal.App.3d at p. 885; *Stark v. Superior Court* (2011) 52 Cal.4th 368, 392 [holding that a violation of section 424 occurs whenever an officer uses public funds in a manner forbidden by the law even though he may have no fraudulent intent when he does so].)

Here, appellants' convictions under section 424 did not punish them for stealing money, labor, or property in excess of a certain dollar amount. Instead, they were punished because Wooten misused his public position and he failed to protect public money and Collins aided him in that effort. Courts have consistently declined to apply the converse *Bailey* doctrine to crimes like section 424, subdivision (a), that focus on the manner of the theft rather than the amount stolen. (See, e.g., *People v. Drake, supra,* 42 Cal.App.4th at pp. 597, 595, [MediCal fraud]; *Neder, supra,* 16 Cal.App.3d at p. 852 [forgery].) Thus, the converse *Bailey* doctrine is inapplicable to appellants' multiple convictions for public officer crimes.

We likewise conclude the converse *Bailey* doctrine does not apply to Wooten's multiple convictions for conflict of interest

21

violations. "The object of section 1090[3] of prohibiting individuals 'from being financially interested in any contract made by them in their official capacity or by the body or board of which they are members is to insure absolute loyalty and undivided allegiance to the best interest of the [government agency] they serve and to remove all direct and indirect influence of an interested officer as well as to discourage deliberate dishonesty. [Citations.]' [Citation.]" (*Thorpe v. Long Beach Community College Dist.* (2000) 83 Cal.App.4th 655, 659.) "The evil to be thwarted by section 1090 is easily identified: If a public official is pulled in one direction by his financial interest and in another direction by his official duties, his judgment cannot and should not be trusted, even if he attempts impartiality." (*Carson Redevelopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323, 1330.) Thus, where a public official holds a personal interest, criminal liability may accrue even in the absence of "actual fraud, dishonesty, unfairness or loss to the governmental entity, and ... without regard to whether the contract in question is fair or oppressive." (*People v. Honig* (1996) 48 Cal.App.4th 289, 314.)

Akin to the public officer crimes for misappropriation of public funds, conflict of interest laws regulate the conduct of the public official and target the manner in which a person exercises his control over public contracts. Like section 424, subdivision (a), the converse *Bailey* doctrine does not apply to conflict of interest

---

[3] Government Code section 1090 provides in relevant part: "[C]ity officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall … city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

violations because the crime's essence is not concerned with the dollar amount that a person may profit from a contract. Instead, Government Code section 1090 is concerned with officials being financially interested in a contract made by them in their official capacity. Accordingly, Wooten's multiple convictions for conflict of interest cannot be aggregated into a single count of conflict of interest.

In sum, multiple counts of violations of section 424, subdivision (a), and Government Code section 1090 were properly charged against appellants.

### 2.2.2.    Embezzlement of Public Funds

Appellants also argue that the embezzlement of public funds is a theft offense, and thus the converse *Bailey* doctrine would apply to the pre-2014 section 504 offenses in this case.

The Attorney General acknowledges that embezzlement is essentially a theft offense and that the converse *Bailey* doctrine may apply to section 504 offenses under the pre-*Whitmer* analysis of the doctrine. However, the Attorney General argues that given the evidence in this case, the converse *Bailey* doctrine does not apply. We agree.

"*Bailey* does not prohibit multiple convictions where the defendant commits a series of thefts based on *separate* intents, even if the defendant acts pursuant to the *same* intent on each occasion. [Citation.]" (*Jaska, supra,* 194 Cal.App.4th at p. 984.) "Whether multiple takings are committed pursuant to one intention, one general impulse, and one plan is a question of fact for the jury based on the particular circumstances of each case. [Citations.]" (*Id.* at pp. 983–984.)

In determining whether appellants' embezzlement offenses must be merged under *Bailey*, we look to several different factors:

23

whether the defendant acted according to a single plot or scheme; whether the defendant stole a defined sum of money or particular items of property; whether the defendant committed the thefts in a short period of time and a similar location; and whether the defendant employed a single method to commit the thefts. (*Jaska, supra,* 194 Cal.App.4th at pp. 984–985.) In evaluating these factors, "we must review the record to determine whether there is substantial evidence to support a finding that the defendant harbored multiple objectives. [Citations.]" (*Id.* at p. 984.) This requires a review of "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Applying these principles here, we conclude the converse *Bailey* doctrine does not require the merger of all of the section 504 convictions for the embezzlements that occurred before 2014; the jury reasonably inferred that appellants acted pursuant to more than one intention, impulse, or plan, even though they embezzled from one victim and had a similar intent for each offense.

Substantial evidence demonstrated that over ten years, Wooten stole various sums of money, committed numerous fraudulent acts, and used distinct methods to steal from the City while Collins aided and abetted him in various ways. Wooten did not submit false invoices every time he submitted legitimate ones. He changed from whom he submitted false invoices, which addresses he used, whether he altered the amounts and whether he used authentic or forged signatures. Further, he created

hundreds of separate invoices, not just one. Wooten and Collins employed numerous distinct methods to conceal the thefts by submitting invoices for numerous types of non-existent (and real) property addresses. Sometimes they submitted invoices for $3,750 and, after obtaining the required signatures, altered the amounts. Other times, they submitted invoices for other amounts between $20,000 and $43,000 with forged signatures. Collins provided "kickback" payments to Wooten for some but not all of the checks he received from the City. Thus, substantial evidence demonstrates that appellants acted under a new impulse and intent each time they embezzled funds.

In reaching this conclusion, we observe that the cases appellants rely on are factually distinguishable. By way of example, in *People v. Packard* (1982) 131 Cal.App.3d 622, 625–627, the defendant was charged with grand theft based on his single three-year scheme to steal Paramount Studios' funds by repeatedly submitting the same fake invoices. In contrast, Wooten used different methods and multiple vendors to carry out the crimes.

And in *People v. Nilsson* (2015) 242 Cal.App.4th 1 (*Nilsson*), a facilities superintendent and two others were convicted of grand theft in a scheme to overbill a city library for maintenance services. The court concluded that the *Bailey* doctrine merged some of the grand theft charges in which the facilities superintendent had altered minor details of the overbilling scheme. (*Id.* at pp. 20–21.) Unlike *Nilsson,* appellants' criminal conduct constituted more than a minor change in the details to carry out each crime. Here, appellants employed distinct plans, means, and methods to embezzle from the City and to avoid

detection, and Wooten used more than one vendor to carry out his crimes.

Appellants' case more closely resembles *People v. Woods* (1986) 177 Cal.App.3d 327, 331, where the court concluded that the converse *Bailey* doctrine did not require the merger of the offenses. In *Woods*, the defendant created 12 different fictitious persons to use for committing welfare fraud. The evidence supported a separate count for each fictitious person because each represented a different intention, general impulse, or plan. (*Id.* at pp. 331–332.) Similarly here, even though the intent in each instance was the same, the creation of false invoices for various vendors for different properties manifest distinct impulses and separate schemes. Accordingly, there is substantial evidence to support appellants' multiple convictions of embezzlement of public funds.

**3.    Appellants were properly convicted of violations of both section 424, subdivision (a), and section 504.**

Appellants also maintain that they cannot be convicted of both section 504 and section 424, subdivision (a) offenses because they are merely different statements of the same crime.

Section 954[4] " 'authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a

---

[4] Penal Code section 954 governs multiple offenses or multiple statements of an offense, and provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the

26

different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).) Whether statutory provisions "define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*).)

In *Gonzalez,* for example, the defendant was convicted of oral copulation of an unconscious person in violation of section 288a, subdivision (f), and oral copulation of an intoxicated person in violation of section 288a, subdivision (i) based on the same act. (*Gonzalez, supra,* 60 Cal.4th at p. 536.) In concluding that the Legislature intended these subdivisions to define separate offenses, the Supreme Court primarily relied on the structure of the statute: "Subdivision (a) of section 288a defines what conduct constitutes the act of oral copulation. [After that], subdivisions (b) through (k) define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 [does not impede] a defendant's conviction under more than one such subdivision for a single act." (*Id.* at p. 539.)

different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged ... ."

27

Subsequently, in *Vidana*, the Supreme Court considered whether larceny and embezzlement were different offenses or merely different statements of the same offense. (*Vidana, supra,* 1 Cal.5th at p. 648.) The court noted that larceny and embezzlement have different elements and are found in "self-contained statute[s]." (*Ibid*.) However, these factors were not dispositive; instead, the court looked to section 490a, which provides that any statute that mentions larceny or embezzlement " 'shall hereafter be read and interpreted as if the word "theft" were substituted therefor.' " (*Ibid*.) The court concluded the "obvious intent" of section 490a "was to create a single crime of theft." (*Ibid*.) Additionally, the court noted that larceny and embezzlement "generally have the same punishment." (*Ibid*.) Thus, the court concluded, larceny and embezzlement "are simply different ways of describing the behavior proscribed by those statutes" and that only one such conviction based on the same act could be sustained. (*Id*. at p. 649.)

Based on *Vidana,* appellants argue that the section 504 counts and section 424, subdivision (a) counts are all "theft" crimes and are simply "different statements of the same offense," i.e., "theft" of public money or public funds. (*Vidana, supra*, 1 Cal.5th at pp. 646–651.) They maintain that all of their convictions under section 504 and section 424, subdivision (a) involved the same overarching scheme and course of conduct. Thus, pursuant to *Vidana,* appellants argue that all but one of the combined "theft" convictions under both code sections should be reversed. We disagree.

The misappropriation of public funds and embezzlement by a public officer are separate offenses. Nothing in *Vidana* commands a different result. First, the elements for these crimes

28

differ. As we explained, section 424, subdivision (a) criminalizes the misappropriation of public funds by public officials charged with the safe-keeping of that money. Section 504, in contrast, applies to any public or private officer or employee who fraudulently appropriates public property for any use or who secretes public property with a fraudulent intent to appropriate it. Second, these crimes are not the lesser included offense of the other, and they are found in "self-contained" statutes. Finally, the misappropriation of public funds by a public official and embezzlement of public funds are not different ways of describing the same behavior. (*Vidana, supra,* 1 Cal.5th at pp. 648–649.) Embezzlement is concerned with the theft of public funds, while the misappropriation of public funds focuses on the abuse of the public position of trust in relation to the funds. Indeed, the Supreme Court has explained that section 424 is distinct from theft offenses such as embezzlement criminalized in section 504. (*People v. Dillon* (1926) 199 Cal. 1, 6–7.) *Dillon* observed that unlike section 424, subdivision (a), section 504 "does not assume to regulate the official conduct of public officers in charge of the public revenue, nor does it command or forbid the doing of the many acts specially mentioned in section 424 … as safeguards of the public moneys. On the other hand, the subject matter and the language of section 424 clearly indicate that the legislative mind was intently concerned with the single, specific subject of the safekeeping and protection of public moneys and the duties of public officers in charge of the same." (*Id.* at p. 6; accord, *Hubbard, supra,* 63 Cal.4th at p. 389 [affirming *Dillon's* interpretation of the purpose of section 424].)

Here, the convictions under section 424, subdivision (a) criminalized Wooten's abuse of his official position, and his

failure to protect public funds. In contrast, the section 504 convictions punished appellants' theft of public funds. Thus, appellants were properly convicted under both statutes.

## 4. Section 654 does not apply to the multiple convictions of section 424, subdivision (a).

Appellants argue that even if this court rejects their other challenges, we should remand and direct the trial court to stay the sentences on all section 424, subdivision (a) convictions under section 654 except one. They maintain that section 654 applies to the section 424, subdivision (a) convictions because all of those crimes were committed pursuant to one continuing course of conduct pursuant to one objective and intent to steal money from the City through a fraudulent scheme. We disagree.

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in *different ways by different provisions of law* shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, italics added.) "By its plain language section 654 does not bar multiple punishment[s] for multiple violations of the same criminal statute." (See *People v. Correa* (2012) 54 Cal.4th 331, 334, 341–344 [clarifying that multiple punishments could be imposed for the multiple convictions based on the same statute].) We also observe that the cases that appellants cite, *Nilsson* and *Kronemyer*, do not address section 654. Instead, those cases concern whether the defendant's conduct should have been charged as separate offenses or whether the criminal conduct warranted a single charge. (*Nilsson, supra,* 242 Cal.App.4th at p. 21; *Kronemyer, supra,* 189 Cal.App.3d at p. 364.)

30

Here, the trial court properly applied section 654 in sentencing appellants: the court stayed the sentences on the section 504 convictions but did not apply it to the multiple convictions of section 424, subdivision (a). Because the public officer crimes alleged here are distinct violations of the same criminal statute, and appellants' criminal conduct was divisible and gave rise to multiple acts, the trial court did not err in failing to stay the sentences on the section 424, subdivision (a) convictions under section 654.

## 5. Appellants are entitled to additional custody credits.

On January 11, 2019, the trial court sentenced both appellants and awarded them custody and conduct credits for the days they had been in custody pending trial. The court awarded Collins presentence custody credits of 88 actual custody days plus 88 days of conduct for a total of 176 days of credits. The court awarded Wooten credit of 136 actual days and 136 days of conduct for a total of 272 days of credit.

On March 19, 2019, the trial court recalled Wooten's sentence, and on April 22, 2019, the court recalled Collins's sentence, reducing each sentence by one year under section 1170, subdivision (d). However, the court imposed the same custody and conduct credits awarded in the original judgments.

Appellants contend, the Attorney General concurs, and we agree that the court should have awarded additional custody credits for the time between the original sentencing and the resentencing dates. (See *People v. Johnson* (2004) 32 Cal.4th 260, 263; *People v. Buckhalter* (2001) 26 Cal.4th 20, 37.)

"As a general rule, a defendant is supposed to have the trial court correct a miscalculation of presentence custody credits." (*People v. Jones* (2000) 82 Cal.App.4th 485, 493.) However,

31

appellate courts may resolve custody credit issues in the interests of judicial economy. (*Ibid.*) If there is no dispute regarding a calculation error, the appellate court need not remand the matter for a calculation. (*See In re Antwon R.* (2001) 87 Cal.App.4th 348, 353.)

In this case, the parties agree that the trial court erred in failing to grant appellants additional custody credits when they were resentenced, and they concur on the number of presentence custody credits that should have been granted: Wooten is entitled to 67 additional days of custody credits, and Collins is entitled to 102 additional days of custody credits. Thus, we amend the judgments to correct the custody credits. (See *People v. Donan* (2004) 117 Cal.App.4th 784, 792–793 [appellate court has authority to order the judgment amended to award the correct amount of custody credits].)

## DISPOSITION

The judgments are modified to reflect an award of additional days of presentence custody credits for appellants as follows: Wooten's judgment is modified to reflect 203 actual custody days and 136 conduct days for a total of 339 days of presentence custody credits; and Collins's judgment is modified to reflect 190 actual custody days and 88 conduct days for a total of 278 days of presentence custody credits. As modified, the judgments are affirmed. Upon issuance of the remittitur, the trial court shall correct the abstracts of judgment and send certified copies of the corrected abstracts of judgment to the Department of Corrections and Rehabilitation.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

SALTER, J.*

---

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.